## PEOPLE v. FERGUSON.

OPINION OF THE COURT.

1. CRIMINAL LAW—PLEA OF GUILTY—WORDS AND PHRASES—"CONSEQUENCE OF HIS PLEA".

Phrase "consequence of his plea" as used in court rule governing acceptance of plea of guilty bears no relation to advice by judge as to maximum or minimum sentences for offense charged but refers instead to the consequences of waiver of constitutional right to trial and all incidents thereof (GCR 1963, § 785.3[2]).

2. SAME—PLEA OF GUILTY—UNDERSTANDING—SENTENCE.

Failure of trial judge to inform an accused of maximum sentence which may be imposed and minimum sentence, if there is one, does not necessarily invalidate a plea of guilty, but may be considered in determining whether a plea was understandingly made.

3. SAME—PLEA OF GUILTY—UNDERSTANDING—SENTENCE.

Plea of guilty of 22-year-old defendant to charge of robbery armed was improperly accepted where the trial judge failed to determine that it was understandingly made in that he failed to inquire as to whether defendant was aware of possible ex-

---

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 21 Am Jur 2d, Criminal Law § 487 et seq.
Court's duty to advise or admonish accused as to consequences of plea of guilty, or to determine that he is advised thereof. 97 ALR2d 549.
[5] 5 Am Jur 2d, Appeal and Error § 778.

tent of sentence which could be imposed, and defendant who
was of low intelligence may have believed, because of the fact
that past convictions had been in other states with relatively
short sentences, that the penalty faced would be far less than
that (life or any term of years) the judge was empowered to
impose.

4. Same—Plea of Guilty—Harmless Error.
    Acceptance by trial judge of plea of guilty from an uneducated
    defendant not shown to have been aware of possible sentence
    of life or any term of years *held,* not harmless error beyond a
    reasonable doubt.

Dissenting Opinion.

Quinn, P. J.

5. Criminal Law—Appeal and Error—Miscarriage of Justice.
    *A criminal defendant cannot predicate reversible error on tech-
    nical non-compliance with court rule where such non-compliance
    was neither a denial of a constitutional right nor shown to be
    a miscarriage of justice (CL 1948, § 769.26; GCR 1963, 529.1).*

Appeal from Genesee, Elliott (Philip), J. Sub-
mitted Division 2 December 7, 1967, at Lansing.
(Docket No. 2,623.) Decided September 25, 1968.
Leave to appeal granted December 12, 1968. 381
Mich 793.

Leonard Ferguson was convicted of robbery armed
on a plea of guilty. Reversed and new trial granted.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Donald A. Kuebler,*
Prosecuting Attorney, and *Paul G. Miller, Jr.,*
Assistant Prosecuting Attorney, for the people.

*Gadola, Gadola & Gadola,* for defendant.

Levin, J. The defendant, Leonard Ferguson,
pleaded guilty to armed robbery[1] and was sentenced

---

[1] CL 1948, § 750.529 (Stat Ann 1954 Rev § 28.797).

to serve 30 to 50 years in State prison on June 30, 1958. He appeals, claiming the trial judge erred in failing to advise him before acceptance of his guilty plea of the minimum sentence the trial judge may have been obliged to impose and of the maximum sentence he might impose.[2]

Whether a trial judge should advise the defendant of the maximum number of years he may be sentenced to serve upon a plea of guilty has been the subject of many opinions of our Court. Recently in *People* v. *Charles A. White* (1967), 8 Mich App 220, it was held that "the phrase 'consequence of his plea' [GCR 1963, 785.3][3] bears no relation to advice by the trial judge to a defendant with respect to punishment" and that the consequence of pleading guilty is "to waive the constitutional right to trial and all the incidents thereof." In *White,* the Court dismissed as dictum the reference in *People* v. *Atkins* (1966), 2 Mich App 199, to "consequence of his plea" in support of *Atkins'* holding that the trial judge in that case should have advised the defendant, who was just 16, of the maximum sentence for the crime there charged. However, the *White* Court went on to observe (p 223):

"The controlling questions in *Atkins, supra,* were whether a youthful defendant *understandingly* waived his right to counsel and *understandingly* pleaded guilty." (Emphasis supplied.)

---

[2] One convicted of armed robbery may not be put on probation. CL 1948, § 771.1 (Stat Ann 1954 Rev § 28.1131).

[3] "If the accused pleads guilty, after such plea and before sentence, the court shall inform the accused of the nature of the accusation and the consequences of his plea; and regardless of whether he is represented by counsel the court shall examine the accused, not necessarily under oath, and as a condition to accepting the plea of guilty and imposing sentence shall assert that the plea was freely, understandingly, and voluntarily made, without undue influence, compulsion, or duress, and without promise of leniency. Unless the court determines that the plea of guilty was so made, it shall not be accepted." GCR 1963, 785.3(2).

Two of the 3 judges who signed the *White* opinion also signed *People* v. *Taylor* (1968), 9 Mich App 333 (leave to appeal granted [1968], 380 Mich 754), where the Court addressed itself to GCR 1963, 785.3 in general and the question presented in *People* v. *White, supra,* in particular (p 335):

"At no time did the trial judge advise defendant of the punishment which might follow his conviction by plea of guilty. Our recent decision in *People* v. *White* (1967), 8 Mich App 220, holds that such advice bears no relation to the phrase 'consequence of his plea' *but such advice is involved in the determination required by 785.3(2) supra, that the plea was 'freely, understandingly and voluntarily made, without undue influence, compulsion, or duress, and without promise of leniency.'*" (Emphasis supplied.)[4]

---

[4] Similarly, in *Kotz* v. *United States* (CA 8, 1965), 353 F2d 312, 314, the court observed: *"Due process, as related to the validity of a plea of guilty, requires that the plea be voluntarily and understandingly made.* In practice, Rule 11, Federal Rules of Criminal Procedure, 18 USCA directs that the court not accept such a plea unless it is satisfied that these elements exist. Such understanding as is necessary to give validity to the plea includes knowledge and comprehension, not only as to the nature of the charge, *but also as to the penalty which can be imposed.* In the language of the Supreme Court, the plea must be made 'with full understanding of the consequences'." (Emphasis supplied.) The court ruled, however, that advice as to possible sentence length need not be given by the judge, if the defendant in fact had obtained advice in that regard from his attorney, and, since defendant's attorney asserted he gave such advice to the defendant, ordered an evidentiary hearing on the question whether defendant had in fact received such advice from his attorney before offering to plead guilty.

*Harper* v. *United States* (CA 10, 1966), 368 F2d 53, 55, interprets rule 11 of the Federal Rules of Criminal Procedure (providing that before acceptance of a guilty plea the court shall first determine "that the plea is made voluntarily with understanding of the nature of the charge" as requiring inquiry by the trial judge whether the defendant has been advised of the maximum sentence that may be imposed). Accord: *Munich* v. *United States* (CA 9, 1964), 337 F2d 356, 361 (stating that the defendant should have been told that he could not be considered eligible for probation because of the nature of the offense to which he pled guilty [see footnote 2] and that where the court rule has not been followed "the government has the burden of proving that the error was harmless, *i.e.,* that the defendant made his

The obligation to determine whether a guilty plea "was freely, *understandingly* and voluntarily made" is imposed upon trial courts by GCR 1963, 785.3(2) *"regardless* of whether he [the defendant] is represented by counsel."[5]

The Supreme Court recently declared in *People* v. *Dunn* (1968), 380 Mich 693, that the previously mentioned court rule provision requiring that an accused person who has pled guilty be advised of the "consequence of his plea", does not oblige the trial judge to inform him of the maximum sentence, favorably citing *People* v. *White, supra.* No issue was presented in *Dunn* as to whether Dunn's plea was "understandingly" made. Dunn had a prior record of criminal conviction; he was charged with prison escape as a second felony, for which offense the maximum sentence was 4-1/2 years.[6] We do not read *Dunn* as relieving the trial judge of the court rule imposed obligation "regardless of whether he [the defendant] is represented by counsel * * * [to] ascertain that the plea was freely, *understandingly,* and voluntarily made." (Emphasis supplied.) We find nothing in *Dunn's* majority opinion inconsistent with the following pertinent observation in Mr. Justice ADAMS' separate dissenting opinion in that case (p 702):

"No pat rule or formula can satisfy the constitutional requirement of intelligent and understanding

---

plea of guilty voluntarily and with understanding of the nature of the charge.") (p 360.)

Compare *Von Moltke* v. *Gillies* (1947), 332 US 708, 724 (68 S Ct 316, 92 L Ed 309).

[5] GCR 1963, 785.3(2) is quoted in footnote 3, *supra.*

Compare *People* v. *Gill* (1967), 8 Mich App 89, 92, where the Court observed, "The presence of counsel does not in all cases warrant the inference that the defendant is apprised of the charge lodged against him."

[6] As to the penalty for prison escape, see CL 1948, § 750.193 (Stat Ann 1962 Rev § 28.390), subsequently amended by PA 1967, No 103. As to the increased penalty for second offense, see CLS 1961, § 769.10 (Stat Ann 1954 Rev § 28.1082).

waiver which depends upon the capacities of a defendant in a given case as well as the explanation by the trial judge."

See, also, *People* v. *Merhige* (1920), 212 Mich 601, 612, where, prior to the adoption of Court Rule No 35A (1945) (the predecessor of present rule 785.1), in a case where the defendant had been sentenced to life imprisonment on his plea of guilty to armed robbery, our Supreme Court declared that among the factors to be considered in appraising the voluntariness of a guilty plea is whether the defendant has been "advised of the extent or nature of the punishment that might be inflicted."

We conclude that, while the failure to inform an accused person of the maximum sentence will not necessarily invalidate his guilty plea, the failure of the record to show that the defendant was aware of any minimum and of the maximum sentence may still be considered in determining whether such a plea was "understandingly" made.

We are persuaded from our examination of the record in this case that the trial judge erred in failing to inquire of the defendant Ferguson whether he was aware of the fact that upon conviction of armed robbery he might be sentenced to State prison for life or for any term of years. There is nothing in the record indicating the defendant was aware he faced such a lengthy sentence upon acceptance of his plea of guilty. Although the defendant had a prior conviction record, each of his prior convictions was in a State other than Michigan and the sentences imposed were relatively short. We do not think the defendant's prior criminal experience would necessarily have informed him that in Michigan the penalty for armed robbery is life or any term of years. Indeed, the defendant's prior experience may have led him to believe the penalty he

faced was of a magnitude far less than in fact it was within the trial judge's power to impose and which actually was imposed in this case.

When convicted, the defendant was 22 years old. The trial judge observed of the defendant and his codefendant: "Neither of these men have average intelligence nor scarcely any education." That observation by the trial judge weighs heavily with us in our review.

We do not mean to be understood as challenging the wisdom of the heavy sentence imposed in this case, but rather as saying that under the circumstances the trial judge should have inquired of the defendant whether he was aware of the possible minimum and of the maximum possible sentence as part of the obligation imposed upon the judge by the rule "regardless of whether he [the defendant] is represented by counsel", to determine that the plea was *understandingly* made.

We are not convinced beyond a reasonable doubt that the error was harmless.[7]

---

[7] *People* v. *Liggett* (1967), 378 Mich 706, 716; *Munich* v. *United States, supra,* discussed in footnote 4, *supra.* Compare *Harrison* v. *United States* (1968), 392 US 219, 224 (88 S Ct 2008, 2011; 20 L Ed 2d 1047, 1052), which suggests that where error has been committed the burden of proving it was not harmless should not be imposed on the accused person.

We find nothing in the record indicating that defendant's attorney gave the defendant advice as to the possible minimum and maximum sentence.

Before defendant's plea was accepted he was asked by the trial judge whether he had "talked this over with your attorney", to which question the defendant responded, "Yes."

At the hearing on defendant's petition to vacate the plea of guilty and the sentence, the defendant was represented by the same attorney who represented him at the time he pled guilty. The attorney was not asked, nor given the opportunity to state, whether he had informed the defendant of the possible minimum and maximum sentences. This appears in the following transcript of the colloquy between this attorney and the judge who heard the motion (not the sentencing judge):

"*Mr. Gadola:* May I approach the bench?

"*The Court:* Yes. That is on the record. The Court asked him if he discussed it with you.

"*Mr. Gadola:* Yes.

·The plea and conviction based thereon are set aside and a new trial granted.

T. G. KAVANAGH, J., concurred with LEVIN, J.

QUINN, P. J. (*dissenting*). In order to place this case in its proper appellate posture, it should be noted that this appeal is from the trial court's denial of defendant's motion to withdraw plea and vacate sentence. Such a motion is addressed to the

---

"*The Court:* All about the plea and what have you. He might not have said how much time he can get and all that but it will be unusual for a prisoner or even a lawyer, even an inexperienced lawyer, not to tell his client what he could get in a case. That is the first thing that they usually do and I doubt whether you did not do it, Mr. Gadola.

"All I am saying is that there is no sense in discussing it any further. I have denied it. Now, if you want to go any further and you feel there is a conflict of interest, then, you will have to file a motion on that basis if you feel that about the affidavit. Now, I do not know what you heard that you will be able to testify to or what you can swear to.

"*Mr. Gadola:* That's my —

"*The Court:* I don't know but it would appear to me — I do not know what will be gained by it. Was there a trial for Mr. Keel? [the other defendant]

"*Mr. Gadola:* Both pleaded guilty, your Honor.

"*The Court:* There was a preliminary examination, though.

"*Mr. Gadola:* Yes.

"*The Court:* And I imagine it was quite a thorough one.

"*Mr. Gadola:* Mr. Ferguson did not have an attorney. Mr. Keel did.

"*The Court:* I cannot see—just assuming even if the Court of Appeals would grant him the right to vacate his sentence and all that, I don't see what is going to be gained by it except possibly—I certainly know I won't reduce it. I may even increase it. I don't know; depending on what might be the outcome.

"*Mr. Gadola:* Yes. The complaining witness is still available.

"*The Court:* That is right and the preliminary examination could be used if he were not even available and if I remember right, a pistol was used to beat him unmercifully.

"*Mr. Henneke:* And a hammer, I understand.

"*The Court:* Or a hammer. I do not know what he can gain by doing it.

"*Mr. Gadola:* My only concern was how I can get it in, whether by an affidavit—

"*The Court:* You write him and tell him I denied it to him and tell him why I denied it. Then, we will cross the bridge when we get to it."

discretion of the trial court. *People* v. *Vasquez* (1942), 303 Mich 340. What we review is the exercise of that discretion by the trial court, and the grant or denial of appellate relief is controlled by our determination of whether or not the discretion has been abused.

The standard by which we determine abuse of discretion is established by statute, CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096) and by rule, GCR 1963, 529.1. A finding of abuse of discretion requires a finding of violation or denial of constitutional right or of miscarriage of justice. *People* v. *Winegar* (1968), 380 Mich 719.

Defendant makes no claim that a constitutional right was violated or denied nor that there has been a miscarriage of justice, probably because any such claim would not be supported by the record. His sole argument for relief is based on alleged technical noncompliance with Court Rule No 35A (1945), presently GCR 1963, 785.3.

On the authority of *People* v. *White* (1967), 8 Mich App 220, *People* v. *Collins* (1968), 380 Mich 131, and *People* v. *Winegar* (1968), 380 Mich 719, I vote to affirm.