PEOPLE *v.* FERGUSON.

DECISION OF THE COURT.

1. APPEAL AND ERROR—EQUALLY DIVIDED COURT.

Decision of the Court of Appeals that a plea of guilty by an uneducated defendant not shown to have been aware of possible sentence of life or any term of years was improperly accepted is affirmed by an equally divided court.

FOR REVERSAL.

T. E. BRENNAN, C. J., and DETHMERS and BLACK, JJ.

2. CRIMINAL LAW—PLEA OF GUILTY—WAIVER OF DEFENSES.

*A plea of guilty terminates the adversary nature of a criminal charge and embodies a waiver of every defense to the charge, whether constitutional, statutory or procedural.*

3. CONSTITUTIONAL LAW—DUE PROCESS—BILL OF RIGHTS.

*The concept of due process of law is not coextensive with the Bill of Rights.*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 902.
[2] 21 Am Jur 2d, Criminal Law § 495.
[3] 16 Am Jur 2d, Constitutional Law § 542.
[4] 16 Am Jur 2d, Constitutional Law § 544 *et seq.*
[5] 4 Am Jur 2d, Appeal and Error §§ 491, 492.
  16 Am Jur 2d, Constitutional Law § 131.
[6, 7] 21 Am Jur 2d, Criminal Law §§ 487, 489, 490, 492.
[8] 21 Am Jur 2d, Criminal Law § 506.
[9] 39 Am Jur, New Trial §§ 26, 150.
  21 Am Jur 2d, Criminal Law § 504.
[10] 21 Am Jur 2d, Criminal Law §§ 487, 489.
[11] 21 Am Jur 2d, Criminal Law §§ 487–489.
[12] 4 Am Jur 2d, Appeal and Error § 491.
[13] 39 Am Jur, New Trial §§ 200, 201, 205, 209.
[14] 21 Am Jur 2d, Criminal Law § 487.
[15] 21 Am Jur 2d, Criminal Law § 495.
[16] 21 Am Jur 2d, Criminal Law §§ 487, 503.

4. CONSTITUTIONAL LAW—DUE PROCESS—FAIR TRIAL.

*The right to testify in one's own behalf, to a trial free of mob hysteria, free from prejudicial communications media interference, free of illegally seized evidence and coerced confessions are of equal importance in that they form the threads of an ever-weaving notion of due process.*

5. CONSTITUTIONAL LAW — WAIVER OF RIGHTS — SILENT RECORD — COURTS.

*Courts may not assume a waiver of constitutional rights from a silent record.*

6. CONSTITUTIONAL LAW—WAIVER OF RIGHTS—CRIMINAL LAW—PLEA OF GUILTY.

*A trial judge in accepting a plea of guilty need not direct the attention of the accused to each and every constitutional right and then obtain a separate express verbal waiver of each right before those rights are extinguished.*

7. CRIMINAL LAW—PLEA OF GUILTY—TRIAL JUDGES' INQUIRY.

*Trial judges when accepting a plea of guilty are expected to make such inquiry as would lead a reasonable person to conclude that the defendant pleads guilty freely, voluntarily and understandingly.*

8. NEW TRIAL—WITHDRAWAL OF PLEA.

*A motion to withdraw plea of guilty and vacate sentence which is filed eight years after conviction is essentially a delayed motion for a new trial.*

9. NEW TRIAL—PLEA OF GUILTY—INVOLUNTARY—BURDEN OF PROOF.

*A defendant who files a motion for a new trial based upon a claim that his plea of guilty was involuntary has a burden to present affidavits or offers of proof which, if true, would preponderate in favor of a conclusion that the plea was the product of fraud, duress, coercion or so devoid of understanding that defendant could not be said to have been sui juris.*

10. CRIMINAL LAW—MAXIMUM PENALTY—COUNSEL.

*A trial judge in accepting a plea of guilty is not obliged to tell an accused, who is represented by counsel, the maximum penalty for the offense charged.*

11. CRIMINAL LAW—PLEA OF GUILTY—COUNSEL—COURT RULES.

*A trial judge who satisfies himself upon the record that a defendant has conferred with competent counsel before offering a plea of guilty, is justified in concluding that the plea is*

*understandingly made within the meaning of the General Court Rules of 1963 (GCR 1963, 785.3[2]).*

12. CRIMINAL LAW—PLEA OF GUILTY—COUNSEL—RECORD.
   *A transcript which discloses that a defendant had discussed his plea of guilty with his attorney is not a silent record.*

13. NEW TRIAL—CRIMINAL LAW—PLEA OF GUILTY—MAXIMUM PENALTY—DISCRETION.
   *Denial of a motion for a new trial, asking to set aside a conviction based upon a plea of guilty on the bare claim defendant did not know the maximum penalty for the offense, is not an abuse of discretion.*

FOR AFFIRMANCE.

KELLY, T. M. KAVANAGH, and ADAMS, JJ.

14. CRIMINAL LAW—PLEA OF GUILTY—CONSEQUENCES OF PLEA—MAXIMUM PENALTY.
   *Before acceptance of a plea of guilty the accused must be advised of the maximum penalty to which he exposes himself by such plea and the record must affirmatively show that defendant understandingly and intelligently submits himself to the consequences of his plea.*

15. CONSTITUTIONAL LAW—WAIVER—CRIMINAL LAW—CONSEQUENCES OF PLEA.
   *Waiver of the constitutional rights of an accused and the imposition of a penalty, even the penalty of probation or a suspended sentence, are not possible consequences of a plea of guilty; they are certain consequences.*

16. CRIMINAL LAW—PLEA OF GUILTY—WITHDRAWAL OF PLEA—CONSEQUENCES OF PLEA—PENALTY—NEW TRIAL.
   *Conviction of robbery armed on a plea of guilty should be reversed and a new trial granted where, on a motion to withdraw the plea, the record does not affirmatively disclose that defendant entered his plea with a full understanding of the charges against him and the possible consequences of his plea but only that his attorney probably told the defendant what the penalty for the offense could be.*

Appeal from Court of Appeals, Division 2, Quinn, P. J., and T. G. Kavanagh and Levin, JJ., reversing Genesee, Philip C. Elliott, J. Submitted January

15, 1970.   (Calendar No. 14, Docket No. 52,211.)
Decided July 17, 1970.

13 Mich App 362, affirmed by an equally divided
Court.

Leonard Ferguson was convicted of robbery
armed on a plea of guilty. Defendant appealed to
Court of Appeals. Reversed and new trial granted.
Plaintiff appeals. Affirmed by an equally divided
Court.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert F. Leonard,*
Prosecuting Attorney, and *Donald A. Kuebler,* Chief
Assistant Prosecuting Attorney, for the people.

*Thomas L. Gadola,* for defendant.

T. E. Brennan, C. J. *(for reversal).*

### The Case

Defendant was convicted of armed robbery upon
his plea of guilty. The plea was entered on May 20,
1958; a sentence of 30 to 50 years was imposed on
June 30, 1958.

On February 17, 1966, defendant filed a motion
to withdraw his plea of guilty and vacate the sen-
tence. A hearing upon the motion was had in circuit
court on February 21, 1966, and the motion was de-
nied.

On appeal, the plea and conviction based thereon
were set aside and a new trial granted. 13 Mich
App 362.

### THE FACTS

The proceedings on the taking of the plea were as follows:

"Proceedings had in the above entitled cause, before Honorable Philip Elliott, circuit judge, on May 20th, 1958.

"Appearances: Mr. Edward Joseph, Ass't. Prosecuting Attorney, appearing for the People. Mr. Geo. Baer and Mr. Thomas Gadola, appearing for the Respondents.

"*Mr. Joseph:* This is criminal matter No. 16530, the People of the State of Michigan v. Leonard Ferguson and Freddie Keels, charged with robbery armed. Mr. Ferguson is present, represented by his attorney, Mr. Thomas Gadola and I understand he wishes to enter a plea.

"*The Court:* You heard what the prosecutor says, Mr. Ferguson?

"*Respondent Ferguson:* Yes, sir.

"*Q.* Is it your desire to plead guilty to this charge?

"*A.* Yes, sir.

"*Q.* Do you understand what the charge is,—it is robbery armed?

"*A.* Yes.

"*A.* Yes, sir.

"*Q.* Have any threats or any promises been made in order to get you to plead guilty?

"*A.* No, sir.

"*Q.* Have you talked this over with your attorney Mr. Gadola?

"*A.* Yes.

"*The Court:* All right, I will accept the plea and defer sentence until the 30th of June.

"*Mr. Baer:* I make a motion to have Leonard Ferguson's name indorsed on the information.

"*The Court:* All right. We hope that when Mr. Ferguson testifies, he will testify to the truth and the whole truth and nothing but the truth.

"*Mr. Joseph:* Mr. Ferguson is remanded?

"*The Court:* Yes, he will be remanded to the custody of the sheriff. He should not be put in the same pen with Mr. Keels."

Defendant's affidavit in support of his motion to withdraw plea of guilty recites, in part:

"3. That your petitioner did not know what possible sentence for armed robbery at the time he entered his plea of guilty; that he only learned of the possible sentence at the time the court pronounced sentence."

In denying the motion to set aside plea and vacate sentence, the circuit judge stated:

"Now, Mr. Gadola, I think I know you. Your father was a circuit court judge and so, you have a background of law. You may be a new young lawyer but I am quite sure that you probably told him what he could get. You probably informed him also that for robbery armed, there must be a prison term; that there cannot be parole or probation.

"I think that based on the fact that he was represented by a lawyer, the fact that the court inquired whether he had discussed this with his attorney, and he said, yes; and then when he sentenced him, the court said that robbery armed carries a possible life sentence, I am quite sure that with the information that he received from you in discussing his plea of guilty with you and what he could get, that he was well aware of the consequences of his plea."

### Discussion

A plea of guilty terminates the adversary nature of a criminal charge.

"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment

and determine punishment." *Boykin* v. *Alabama* (1969), 395 US 238 (89 S Ct 1709, 23 L Ed 2d 274).

A plea of guilty embodies a waiver of every defense to the charge, whether constitutional, statutory or procedural.

A plea of guilty embodies a waiver of every constitutional right, both state and federal, which belongs to an accused in his capacity as an accused; his right to be informed of the nature and cause of the accusation; his right to be presumed innocent; his right to have every element of the crime charged against him proven beyond a reasonable doubt; his right to a speedy and public trial, by an impartial jury of his peers; his right not to be compelled to be a witness against himself; his right to be confronted by his accusers; his right to have compulsory process for the attendance of witnesses in his behalf; and a host of other rights, less simply stated which comprise the totality of the American concept of due process of law.

That concept of due process of law is not coextensive with the Bill of Rights. *Palko* v. *Connecticut* (1937), 302 US 319 (58 S Ct 149, 82 L Ed 288); *Benton* v. *Maryland* (1969), 395 US 784 (89 S Ct 2056, 23 L Ed 2d 707).

It is not susceptible of precise definition; certainly it defies enumeration. To the extent that the concepts of due process and fair trial are flexible, viable standards, so the due process rights of an accused must remain incapable of recitation in full.

The right to testify in one's own behalf; the right to a trial free of mob hysteria, *Moore* v. *Dempsey* (1923), 261 US 86 (43 S Ct 265, 67 L Ed 543); the right to a trial free from prejudicial media interference, *Sheppard* v. *Maxwell* (1966), 384 US 333 (86 S Ct 1507, 16 L Ed 2d 600); the right to a trial free

of illegally seized evidence, *Mapp* v. *Ohio* (1961),
367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d
933); and coerced confessions, *Miranda* v. *Arizona*
(1966), 384 US 436 (84 S Ct 1602, 16 L Ed 2d 694, 10
ALR3d 974); all of these are of equal importance
in the spectrum of constitutional rights, in that they
form the threads of an ever-weaving notion of due
process.

Only against this background can the pronounce-
ments of the U. S. Supreme Court in *Carnley* v.
*Cochran* (1962), 369 US 506 (82 S Ct 884, 8 L Ed 2d
70), and *Johnson* v. *Zerbst* (1938), 304 US 458 (58
S Ct 1019, 82 L Ed 1461), be evaluated.

Courts may not, as held in those cases, assume a
waiver of constitutional rights from a silent record.
But it does not follow that *Johnson* and similar
cases stand for the proposition that the trial judge
must direct the accused's attention to each and every
constitutional right and then obtain a separate ex-
pressed verbal waiver of each, before they can be
said to be extinguished.

No such standard has been imposed by the United
States Supreme Court. Quite the contrary, that
Court has emphasized in *Boykin* v. *Alabama, supra,*
that the plea of guilty constitutes the operative
words of express waiver by which the several rights
of the accused are let go.

"Several federal constitutional rights are involved
in a waiver *that takes place when* a plea of guilty is
entered    *    *    *    ." *Boykin* v. *Alabama, supra,* p
243. (Emphasis added.)

"A defendant who enters such a plea *simultane-
ously* waives several constitutional rights,  *  *  * ."
*McCarthy* v. *United States* (1968), 394 US 459, 466
(89 S Ct 1166, 1171, 22 L Ed 2d 418, 425). (Em-
phasis added.)

It was for this reason that the Supreme Court in *Boykin,* as in *McCarthy, supra,* has held that an on-the-record inquiry into the voluntariness of a plea of guilty is necessary.

It is precisely because a plea of guilty which is voluntarily, freely and understandingly made, *does* constitute an express waiver of constitutional rights, that the Supreme Court has found unacceptable a guilty plea record which is silent upon the matter of the genuineness of the plea.

But it is urged that, even though the court is not obliged to obtain expressed item-by-item waivers of enumerated constitutional rights, the same kind of item-by-item advices must be given the defendant by the judge and on the record, before the court is justified in concluding that the offered plea is "understandingly" made.

Whether or not *Boykin* is determined finally to have retroactive effect, we do not interpret that case as imposing any such item-by-item advices. The extent of an accused's "understanding" of the act of pleading guilty varies with the capacity of the accused to understand. His knowledge and retention of all the relevant factors which ought to be weighed in reaching a decision to plead guilty will depend in each case upon the accused's mentality. His determination of which factors are relevant in arriving at that decision, and the weight he gives them are hidden in the secret recesses of his own motivation.

A trial judge is not competent to probe the psyche of the accused who stands before him. Judges are, however, competent and expected to make such inquiry as would lead a reasonable person to conclude that the defendant pleads guilty freely, voluntarily and understandingly—in short, that the defendant knows what he is doing, that he doesn't have to do what he is doing, but he wants to do it anyway.

The Court below held:

"We are persuaded from our examination of the record in this case that the trial judge erred in failing to inquire of the defendant Ferguson whether he was aware of the fact that upon conviction of armed robbery he might be sentenced to state prison for life or for any term of years. There is nothing in the record indicating the defendant was aware he faced such a lengthy sentence upon acceptance of his plea of guilty."

and further that,

"* * * the trial judge should have inquired of the defendant whether he was aware of the possible minimum and of the maximum possible sentence as part of the obligation imposed upon the judge by the rule 'regardless of whether he [the defendant] is represented by counsel,' to determine that the plea was *understandingly* made."

We do not agree that there was nothing in the record indicating the defendant was aware of the possible minimum and maximum sentences for the crime with which he was charged. The trial judge asked the defendant on the record, whether he had "talked this over with your attorney."

While such an inquiry would hardly be rega:ded as exhaustive, it formed the basis upon which a reasonable person could conclude that the defendant had discussed with his counsel all questions of statutory law which were regarded by him as being relevant to his decision to plead guilty. The determination that the plea is understandingly made does not require the trial judge to intrude upon the rapport which the accused has with his counsel.

Indeed, any prolonged attempt by the trial judge to counsel with the defendant will be fraught with danger, for the decision to plead guilty should not

be made hastily in the uneasy setting of the court-room, nor based upon factors brought to light for the first time while the defendant is ·on his feet before the bar of justice.

It is true that in *Boykin* v. *Alabama,* the defendant was represented by counsel at the time his plea was entered. Still, the *Boykin* record was totally silent upon the question of whether Boykin's plea was understandingly made. The *Boykin* record does not show that the trial judge even spoke to the defendant, nor that the defendant had ever counselled with the attorney who appeared in court with him.

## THE DECISION

In the instant case, we pass upon the exercise of the trial court's discretion in denying defendant's eight-year-late motion "to withdraw plea and vacate sentence."

This is essentially a delayed motion for a new trial. The defendant does not attack the truth of his plea. He does not allege that he is innocent of the crime of which he was convicted.

Rather, he grounds his motion for new trial upon the claim that he did not know of the maximum penalty for armed robbery at the time he plead guilty to that charge.

He does not claim that his lawyer was incompetent, or that his lawyer misrepresented the maximum penalty. He does not even allege that his lawyer did not tell him the maximum.

Rather, he makes only the irrebuttable statement of subjective mental condition—"I did not know."

Tested by the rule set forth in the recent case of *People* v *Taylor* (1970), 383 Mich 338, the defendant's burden upon motion for new trial based upon a claimed involuntary plea, was to present to the court

affidavits or offers of proof which, if true, would preponderate in favor of a conclusion that the plea was the product of fraud, duress or coercion, or so devoid of understanding that the defendant could not be said to have been *sui juris.*

We hold:

1. That a trial judge is not obliged to tell an accused, who is represented by counsel, the maximum penalty for the offense charged. See *People* v. *Dunn* (1968), 380 Mich 693.

2. That a trial judge who satisfies himself upon the record that the defendant has conferred with competent legal counsel prior to offering a plea of guilty, is justified in concluding that the plea is understandingly made within the meaning of GCR 1963, 785.3(2).

3. That a transcript of proceedings which discloses that the defendant had discussed his plea with his attorney is not a "silent record" within the meaning of *Boykin* v. *Alabama.*

4. That a motion for new trial, asking to set aside a conviction based upon a plea of guilty does not allege that the plea was involuntary for lack of requisite understanding by the bare claim that the defendant "did not know" the maximum penalty for the offense; and the denial of such a motion does not constitute an abuse of discretion.

The Court of Appeals is reversed and the order of the circuit court denying motion to withdraw guilty plea and vacate sentence is affirmed.

Dethmers and Black, JJ., concurred with T. E. Brennan, C. J.

T. M. Kavanagh, J. (*for affirmance*). We would affirm the Court of Appeals. There may have been some excuse for the error in *People* v. *Dunn* (1968),

380 Mich 693. However, since that time we have had *Boykin* v. *Alabama* (1969), 395 US 238 (89 S Ct 1709, 23 L Ed 2d 274), and *McCarthy* v. *United States* (1968), 394 US 459 (89 S Ct 1166, 22 L Ed 2d 418), together with the recent cases of *Brady* v. *United States* (1970), 397 US 742 (90 S Ct 1463, 25 L Ed 2d 747); *Parker* v. *North Carolina* (1970), 397 US 790 (90 S Ct 1458, 25 L Ed 2d 785); and *McMann* v. *Richardson* (1970), 397 US 759 (90 S Ct 1441, 25 L Ed 2d 763); all of which support the position taken by Justice SOURIS in his dissenting opinion in *People* v. *Dunn, supra. Brady, Parker* and *McMann* deal with the voluntariness of guilty pleas and lend support to the position that before acceptance of the guilty plea the accused must be advised of the maximum penalty to which he exposes himself by such plea and that the record must affirmatively show that defendant understandingly and intelligently submits himself to the consequences of his plea.

The *Parker* and *Brady* cases are companion cases holding that in both state court (*Parker*) and Federal court (*Brady*) prosecutions a guilty plea motivated by a desire to avoid the risk of a jury's death penalty is not thereby inherently involuntary. *McMann* deals with the induction of a guilty plea by a prior involuntary confession.

Although *Brady* and *Parker* deal with "known penalty possibilities" as affecting voluntariness rather than with "ignorance of penalty consequences" as affecting intelligent and voluntary waiver—as in the instant case—some of Justice White's statements, speaking in behalf of the Court in these two cases, indicated that *Boykin* has a greater impact on the Ferguson situation than is acknowledged by Chief Justice T. E. BRENNAN in his opinion in the instant case:

"The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. * * * The new element added in *Boykin* was the requirement that the record must *affirmatively disclose* that a defendant who pleaded guilty entered his plea understandingly and voluntarily * * * ." *Brady* v. *United States, supra* (p 747, n 4). (Emphasis added.)

The *Boykin* language is "affirmative showing" that the plea was understandingly and voluntarily made. (p 242.) *Boykin* requires more than that the record not be silent. "To disclose" is not merely "to indicate," "to suggest," or "to infer" (as the Court's knowledge of defendant's assistance by counsel might do), that an accused adequately understands the vital rights being waived and the consequences of such waiver.

The United States Supreme Court in *North Carolina* v. *Pearce* (1969), 395 US 711 (89 S Ct 2072, 23 L Ed 2d 656), in discussing the absence of a motivation of vindictiveness against a defendant for having successfully attacked his first conviction, gave some indication of what it means by "affirmative showing" when it said:

"[W]e have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. * * * And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." (P 726.)

The *Brady* Court also said:

"The importance of assuring that a defendant does not plead guilty except with a *full understanding* of the charges against him and the *possible conse-*

*quences* of his plea was *at the heart* of our recent decisions in *McCarthy* * * * and *Boykin* * * * ." 397 US 742, 749, n 6 (90 S Ct 1463, 1469, n 6, 25 L Ed 2d 747, 756, n 6). (Emphasis added.)

The waiver of the constitutional rights of an accused and the imposition of a penalty (even probation or a suspended sentence is a penalty) are not *"possible* consequences" of a guilty plea; they are *certain* consequences. Accordingly, if the trial court need only ascertain that the accused is aware of the above-mentioned certain consequences (as Chief Justice T. E. Brennan's *Ferguson* opinion indicates), then the use of the adjective "possible" in the above quotation from *Brady* would be superfluous. Therefore, the quotation supports Ferguson's argument that an accused must be advised of the maximum sentence to which he exposes himself by a guilty plea. Such a sentence would be a *"possible* consequence" of the plea, not a *certain* one.

In addition, *Boykin* expressly applied to guilty pleas the criterion for valid waiver of the right to counsel announced in *Carnley* v. *Cochran* (1962), 369 US 506, 516 (82 S Ct 884, 890, 8 L Ed 2d 70, 77):

"The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." (P 242.)

This quote from *Carnley* was immediately followed by:

"We think that the *same standard* must be applied to determining whether a guilty plea is voluntarily made." (P 242.) (Emphasis added.)

Without regard as to whether *Boykin* should be applied retroactively or prospectively, it and subse-

quent cases have enunciated old principles that are applicable in the instant case. The only claim by the people is that the record discloses the trial judge inquired of defendant as to whether he had talked this over with his attorney, and he replied, "yes." Defendant claims by affidavit attached to his application to withdraw guilty plea that he did not know the possible sentence.

The trial court in denying the motion to withdraw guilty plea said:

"You may be a new young lawyer but I am quite sure that you *probably* told him what he could get. You *probably* informed him also that for robbery armed, there must be a prison term; that there cannot be parole or probation." (Emphasis added.)

Note the indefiniteness of the language—both statements conditioned by the word "probably."

We conclude that this record does not affirmatively disclose that defendant entered his plea with a full understanding of the charges against him and the possible consequences of his plea.

For the above reasons, the Court of Appeals should be affirmed.

Kelly and Adams, JJ., concurred with T. M. Kavanagh, J.

T. G. Kavanagh, J., did not sit in this case.