## PEOPLE v PARKER

Docket No. 55014. Argued March 14, 1974 (Calendar No. 14).—Decided April 7, 1975.

Lorenzo Parker was tried in the Recorder's Court of Detroit, Thomas L. Poindexter, J., and convicted of assault with intent to do great bodily harm less than murder. Before trial, he was referred, on the court's own motion, to the Recorder's Court Psychiatric Clinic for a pretrial competency evaluation. The report of the clinic indicated that defendant was competent to stand trial. The Court of Appeals, Bronson, P. J., and R. B. Burns and Van Valkenburg, JJ., reversed the conviction on the ground that the trial court, having *sua sponte* raised the issue of defendant's competency, did not comply with the statute, MCLA 767.27a; MSA 28.966(11), and court rule, GCR 1963, 786, which require the issuance of an order to show cause why defendant should not be committed to an approved diagnostic facility for psychiatric evaluation (Docket No. 13977). The Supreme Court granted leave to appeal. *Held:*

1. A trial court can, *sua sponte,* order and consider the results of a psychiatric examination conducted by the Recorder's Court Psychiatric Clinic as a preliminary measure in determining whether there is sufficient showing that defendant may be incompetent to stand trial.

2. Referral of the defendant to the clinic does not tend to establish his incompetency in a case where the offense charged was a brutal assault and the court may have ordered the examination as a precautionary measure to inform itself on the general issue of the defendant's mental and emotional stability.

3. Non-certified facilities or private psychiatrists are proper sources of information which a court may consider when determining whether to raise formally the issue of a defendant's competency or when it conducts a hearing to determine

REFERENCES FOR POINTS IN HEADNOTES
[1–4, 6, 7] 21 Am Jur 2d, Criminal Law §§ 48, 69.
[5] 58 Am Jur 2d, New Trial § 192 *et seq.*
[8–22] 21 Am Jur 2d, Criminal Law §§ 62, 63, 65, 69.

whether it has been shown that a defendant may be incompetent.

4. The decision is without prejudice to defendant's filing a delayed motion for a new trial asserting that he was incompetent when he was convicted.

Williams, J. (T. M. Kavanagh and Swainson, JJ., concurring), dissented, stating that a trial court may not *sua sponte,* without a show-cause hearing, commit a defendant for forensic psychiatric evaluation, that a defendant may not be committed to other than a certified diagnostic facility, and that once the issue of competence has been raised the defendant may not be found competent to stand trial without an adversary hearing.

46 Mich App 562; 208 NW2d 537 (1973) reversed.

### OPINION OF THE COURT

1. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—PRELIMINARY PSYCHIATRIC EXAMINATION—RECORDER'S COURT PSYCHIATRIC CLINIC.

A recorder's court judge can, *sua sponte,* order and consider the results of a psychiatric examination conducted by the Recorder's Court Psychiatric Clinic as a preliminary measure in determining whether there is sufficient showing that a defendant may be incompetent to stand trial (MCLA 767.27a; GCR 1963, 786).

2. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—PRELIMINARY PSYCHIATRIC EXAMINATION—RECORDER'S COURT PSYCHIATRIC CLINIC.

Engaging the professional assistance of the Recorder's Court Psychiatric Clinic to make a preliminary psychiatric examination of a defendant is not tantamount to a substitution of the clinic's judgment for that of a certified diagnostic facility because, barring any patently abnormal behavior by the defendant, the information before the trial court may not be adequate to make a determination whether it has been shown that defendant may be incompetent to stand trial; the very purpose of conducting a preliminary psychiatric examination is to make this initial determination.

3. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—PRELIMINARY PSYCHIATRIC EXAMINATION.

Referral of a defendant to a psychiatric clinic for a pretrial competency evaluation does not tend to establish a defendant's incompetency; the court may have ordered an examination as a precautionary measure for the purpose of informing itself on the general issue of defendant's mental and emotional stability where the offense charged was a brutal assault.

4. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—NON-CERTIFIED FACILITIES—PSYCHIATRISTS.

Non-certified facilities or private psychiatrists are proper sources of information which a court may consider when determining whether to raise formally the issue of a defendant's competency or when it conducts a hearing to determine whether it has been shown that defendant may be incompetent.

5. NEW TRIAL—MOTIONS.

A delayed motion for a new trial can always be filed at any time on leave granted by the court.

DISSENTING OPINION

T. M. KAVANAGH, SWAINSON, and WILLIAMS, JJ.

6. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—PSYCHIATRIC EVALUATION—COMMITMENT.

*A trial court may not* sua sponte *without a show-cause hearing commit a defendant charged with a crime for forensic psychiatric evaluation to determine his competency to stand trial.*

7. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—PSYCHIATRIC EVALUATION—COMMITMENT—DIAGNOSTIC FACILITY—DEPARTMENT OF MENTAL HEALTH.

*A trial court may not commit a defendant charged with a crime for forensic psychiatric evaluation to other than a diagnostic facility certified by the Department of Mental Health to determine his competency to stand trial.*

8. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—DUE PROCESS.

*A trial court may not declare a defendant charged with a crime competent to stand trial, once the question of his competency has been raised, without an adversary hearing.*

9. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—COMMITMENT—DUE PROCESS.

*Commitment to a psychiatric facility, whether it follows as a result of a temporary competency order or referral, or as a result of civil or criminal involuntary commitment proceedings, is a deprivation of liberty, and no such deprivation is permissible unless the demands of due process are met, at minimum the requirements being adequate notice and opportunity for hearing.*

10. CRIMINAL LAW—DUE PROCESS—COMPETENCY TO STAND TRIAL—
    PSYCHIATRIC REFERRAL—COURT RULES.

   *The court rule regarding mental competency hearings in criminal trials makes explicit provisions for the due process requirements of notice and hearing when the trial court sua sponte raises the issue of defendant's potential incompetency to stand trial; consequently,* sua sponte *psychiatric referral by the trial court without opportunity for a hearing is a clear violation of that rule as well as a denial of individual liberty proscribed by the constraints of due process (GCR 1963, 786.4).*

11. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—PSYCHIATRIC
    EVALUATION—COURT RULES—DUE PROCESS.

   *The court rule regarding mental competency hearings in criminal trials was carefully drafted to protect individual rights and liberties while at the same time recognizing the state's interests in providing a fair trial and protecting incompetents; the use of a procedure which, in effect, creates a new class of competency referrals, short-circuiting the rule and the demands of due process, cannot be sanctioned (GCR 1963, 786.4).*

12. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—COMMITMENT—
    PSYCHIATRIC EVALUATION—DUE PROCESS.

   *Commitment for psychiatric evaluation of competency to stand trial in a criminal case may not take place without, at the least, notice and opportunity for a hearing.*

13. CRIMINAL LAW—COURT RULES—COMMITMENT—DIAGNOSTIC FACIL-
    ITY—COMPETENCY TO STAND TRIAL.

   *The court rule on competency to stand trial calls for commitment to an approved diagnostic facility certified by the Department of Mental Health following a showing satisfying the trial court that defendant may be incompetent to stand trial in a criminal case and that commitment for evaluation is warranted (MCLA 767.27a[3]; GCR 1963, 786.4).*

14. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—PSYCHIATRIC RE-
    FERRAL—STATUTES—COURT RULES.

   *A trial court judgment that psychiatric referral is necessary is a judgment that defendant may be incompetent to stand trial within the meaning of the statute regarding persons incompetent to stand trial in a criminal case and, as a result, holding a show-cause hearing under the rule regarding mental competency hearings in criminal trials is mandated (MCLA 767.27a; GCR 1963, 786.4).*

15. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—PSYCHIATRIC
    . EVALUATION—COMMITMENT—HEARING—COURT RULES.

    *A trial court, having raised the issue of defendant's competency
    to stand trial in a criminal case, was obliged to issue an order
    for the defendant to show cause why he should not be commit-
    ted to an approved diagnostic facility for a psychiatric evalua-
    tion and to hold a hearing to determine the defendant's compe-
    tency (GCR 1963, 786.4).*

16. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—MOTIONS—HEAR-
    ING—COURT RULES.

    *Once there has been a motion to test defendant's competency to
    stand trial in a criminal case, either competency or incompe-
    tency cannot be declared except after an adversary hearing
    (GCR 1963, 786).*

17. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—COURT RULES—
    CONFINEMENT—CONSTITUTIONAL LAW.

    *The state, acting through a trial court under the court rule
    regarding mental competency hearings in criminal trials, does
    not have the power to confine a person involuntarily without
    first obtaining a judicial determination that confinement is
    warranted, such determination being surrounded by the consti-
    tutionally necessary procedural safeguards including an adver-
    sary hearing (GCR 1963, 786.7).*

18. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—STATUTES—
    "SHOWING"—COURT RULES—HEARING—COMMITMENT.

    *The "showing" referred to in a statute regarding persons incom-
    petent to stand trial in a criminal case which provides that
    upon a showing that the defendant may be incompetent to
    stand trial, the court shall commit the defendant is not a
    preliminary showing that a show-cause hearing under the court
    rules is desirable; the reference is to the ultimate showing of
    possible incompetency mandating trial court commitment for
    evaluation (MCLA 762.22a[3]; GCR 1963, 786.4).*

19. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—COURT RULES.

    *Most, if not all, avenues of information for the trial court to
    obtain information about a defendant's competency through the
    defendant himself are limited to procedures under the court
    rule regarding mental competency hearings in criminal trials
    (GCR 1963, 786).*

20. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—COMMITMENT—
    PSYCHIATRIC EVALUATION—DUE PROCESS.

    *No involuntary commitment for psychiatric evaluation of compe-*

*tency to stand trial in a criminal case may take place without, at the least, notice and opportunity for a hearing.*

21. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—PSYCHIATRIC RE-
    FERRAL—COURT RULES—HEARING—COMMITMENT.

   *A trial court judgment that psychiatric referral for evaluation of competency to stand trial in a criminal case is necessary is implicitly a judgment that defendant "might" be incompetent and, accordingly, the trial court must act under the court rule and hold a show-cause hearing on its* sua sponte *motion to commit defendant for evaluation; should the show-cause hearing bear out the trial court judgment that defendant "might" be incompetent, and given no compelling reasons why defendant should not be so committed, the court should order temporary commitment for evaluation to a facility certified by the Department of Mental Health as provided by the court rule (GCR 1963, 786.4).*

22. CRIMINAL LAW—MISTRIAL—PSYCHIATRIC REFERRAL—CONSTITU-
    TIONAL LAW—DUE PROCESS.

   *Denial of defendant's motion for mistrial in a criminal case because of improper psychiatric referral was erroneous where the defendant did not receive the benefit of his due-process rights.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

J. W. FITZGERALD, J. On May 4, 1971, a shooting incident occurred which resulted in defendant's jury conviction of assault with intent to do great bodily harm less than the crime of murder.[1] This conviction was reversed by the Court of Appeals on the ground that the trial court, having *sua sponte* raised the issue of defendant's competency,

---

[1] MCLA 750.84; MSA 28.279.

did not comply with the statute and court rule provisions which require the issuance of an order to show cause why defendant should not be committed to an approved diagnostic facility for psychiatric evaluation. Following the Court of Appeals denial of the people's application for rehearing, we granted leave to appeal.

On July 23, 1971, prior to trial, Judge Geraldine Bledsoe Ford, on her own motion, referred defendant to the Recorder's Court Psychiatric Clinic for a pretrial competency evaluation. A report dated July 30, 1971, indicated that defendant was competent to stand trial. The clinic responded to two subsequent referrals of defendant to the clinic by Judges Elvin L. Davenport and Robert L. Evans by providing them with copies of the July 30 report. The record does not disclose why the subsequent referrals were made. Upon review of this examination report, Presiding Judge Evans declared defendant competent to stand trial.

The matter for resolution is more clearly stated by setting forth the pertinent statute and court rule together with the positions advanced by the parties. MCLA 767.27a; MSA 28.966(11) provides:

"(1) A person accused of a crime who is incompetent to stand trial shall not be proceeded against while he is incompetent. A person is incompetent to stand trial within the meaning of this section if he is incapable of understanding the nature and object of the proceedings against him, of comprehending his own condition in reference to the proceedings, or of assisting in his defense in a rational or reasonable manner.

"(2) The issue of competence to stand trial may be raised by the prosecuting attorney, defense counsel, by any interested person on leave of the court, or by the court on its own motion. The time and form of the procedure incident to raising the issue of competence shall be provided by court rule.

"(3) Upon a showing that the defendant may be incompetent to stand trial, the court shall commit the defendant in the criminal case to the custody of the center for forensic psychiatry or to any other diagnostic facility certified by the department of mental health for the performance of forensic psychiatric evaluation. The commitment shall be for a period not to exceed 60 days. Within that period the center or other facility shall prepare a diagnostic report and recommendations which are to be transmitted to the committing court."

GCR 1963, 786 states:

".1 The issue of a defendant's competence to stand trial as defined in PA 1966, No 266 may be raised at any time before trial by a written motion to commit the defendant to the department of mental health.

".2 The issue of defendant's competence to stand trial may be raised during trial only by the trial court on its own motion.

".3 If defendant is the moving party, the court shall order the defendant committed to a diagnostic facility certified by the department of Mental Health for the performance of forensic psychiatric evaluation for a period not to exceed 60 days from the date of the commitment order.

".4 If the motion is not made by the defendant, the court shall order the defendant to show cause why he should not be committed to an approved diagnostic facility certified by the department of Mental Health for the performance of forensic psychiatric evaluation, for a period not to exceed 60 days from the date of the commitment order.

".5 When a defendant has been committed to an approved diagnostic facility certified by the department of Mental Health for the performance of forensic psychiatric evaluation, the motion to commit the defendant to the department of Mental Health shall stand adjourned pending receipt of the diagnostic report and recommendation of the facility.

".6 Where the issue of a defendant's competence to stand trial is raised during the trial by the court, the

trial of the cause shall be continued or a mistrial declared as the court shall in its discretion deem appropriate.

".7 If upon the hearing on the motion the defendant shall be adjudged incompetent to stand trial, he shall be committed to the department of Mental Health pursuant to PA 1966 No 266, and the pending criminal proceedings against such defendant shall stand adjourned until the further order of the court." (Adopted May 15, 1969.)

The people contend that the issue of competency was never raised and that there is no showing or even claim that the defendant was in fact incompetent at the time of trial.

Defendant maintains that his referral to the Recorder's Court Psychiatric Clinic by the trial judge raised, or at least established that there was sufficient evidence to raise, the issue of competence. Properly raised, then, the issue of competency to stand trial was not resolved in compliance with the statute and court rule provisions since the judgment of uncertified psychiatric clinics was substituted for that of approved centers for forensic psychiatry or certified diagnostic facilities.

The issue thus becomes whether the trial court can, *sua sponte,* order and properly consider the results of a psychiatric examination conducted by the Recorder's Court Psychiatric Clinic as a preliminary measure in determining whether there is sufficient showing that defendant may be incompetent to stand trial. We think the procedure followed in the instant case was proper and does not contravene any of the statutory or court rule provisions cited earlier.

Engaging the professional assistance of the Recorder's Court Psychiatric Clinic is not tantamount to a substitution of the clinic's judgment for that

of a certified diagnostic facility. Barring any patently abnormal behavior by the defendant, the information before the trial court may not be adequate to make a determination whether it has been shown that defendant may be incompetent to stand trial. Indeed, the very purpose for conducting a preliminary psychiatric examination is to assist the court in making this initial determination. A distinction should be drawn between those preliminary procedures which assist the trial court in determining whether a showing has been made that defendant may be incompetent and the subsequent orders which should issue when a showing has been made.

Defendant did not raise the issue of competency. He did not make a motion to be committed to the Department of Mental Health (GCR 1963, 786.1). He did not offer any evidence on his motion for a mistrial that he was in fact incompetent to stand trial. The report of the psychiatric clinic was to the contrary—defendant has made no attempt to refute it. He does not even now assert that he was in fact incompetent.

The trial court's referral of defendant to the psychiatric clinic does not tend to establish defendant's incompetency. The offense was a particularly ruthless one. Defendant was charged with shooting his victim at point-blank range, once in the arm and once through the mouth. The court may have been impressed with the brutal nature of the assault and ordered an examination as a precautionary measure for the purpose of informing itself on the general issue of defendant's mental and emotional stability.

In practice, courts frequently refer defendants to a non-certified facility or a private psychiatrist before the competency hearing is conducted with-

out violating their due process or self-incrimination rights. These represent proper sources of information which a court may consider when determining whether to raise formally the issue of defendant's competency or when it conducts a hearing to determine whether it has been "shown" that defendant "may be" incompetent. See *People v Doerfer,* 46 Mich App 662; 208 NW2d 521 (1973). Copies of the report should be sent to defendant's lawyer and the prosecutor as well as to the court.

That the trial court sought to make an informed decision about Parker's possible incompetency, in the circumstance that he was not deprived of his liberty, was not improper. And that the court, having dispelled whatever doubts it may have had about his competency, proceeded to trial without "show causing" and "committing" him, is not grounds for ordering a new trial.

Our decision of course is without prejudice to defendant's filing a delayed motion for a new trial asserting that he was incompetent when he was convicted. A delayed motion for a new trial can always be filed at any time on leave granted by the trial court. For the future, the procedural remedy set forth in *People v Lucas,* 393 Mich 522; 227 NW2d 763 (1975), also decided today, will apply.

The Court of Appeals is reversed and defendant's conviction reinstated.

T. G. KAVANAGH, C. J., and LEVIN and M. S. COLEMAN, JJ., concurred with J. W. FITZGERALD, J.

WILLIAMS, J. *(to affirm).* This case brings before the Court issues relating to competency to stand trial—the applicable statute, court rule, and trial court procedure. The record raises three issues on appeal:

1. May a trial court *sua sponte* without a show-cause hearing commit a defendant for forensic psychiatric evaluation?

2. May a trial court commit a defendant for forensic psychiatric evaluation to other than a "diagnostic facility certified by the department of mental health"?

3. May a trial court declare a defendant competent to stand trial, once the question of his competency has been raised, without an adversary hearing?

All three questions are answered in the negative. The Court of Appeals is affirmed.

I. *Facts.*

The facts and the applicable statute and court rule involved in this appeal are well and fully set forth in my Brother J. W. FITZGERALD'S opinion.

II. *Is Commitment for Psychiatric Evaluation Without Notice and Hearing Legal?*

Commitment to a psychiatric facility, whether it follows as a result of a temporary competency order or referral, or as a result of civil or criminal involuntary commitment proceedings, is a deprivation of liberty. No such deprivation is permissible unless the demands of due process are met, at minimum the requirements being adequate notice and opportunity for hearing.[1] *Cf. Bell v Wayne County General Hospital,* 384 F Supp 1085 (ED Mich, 1974); *Specht v Patterson,* 386 US 605; 87 S Ct 1209; 18 L Ed 2d 326 (1967); *Jackson v Indiana,* 406 US 715; 92 S Ct 1845; 32 L Ed 2d 435 (1972); *McNeil v Director, Patuxent Institution,* 407 US 245; 92 S Ct 2083; 32 L Ed 2d 719 (1972).

---

[1] *See* for a perceptive analysis on this point Kaufman, *Evaluating Competency: Are Constitutional Deprivations Necessary?,* 10 Am Crim L Rev 465 (1972).

GCR 1963, 786.4 makes explicit provision for the
due process requirements of notice and hearing
when the trial court *sua sponte* raises the issue of
defendant's potential incompetency to stand trial:

".4 *If the motion* [to commit the defendant to the
department of mental health] *is not made by the de-
fendant, the court shall order the defendant to show
cause* why he should not be committed to an approved
diagnostic facility certified by the department of mental
health for the performance of forensic psychiatric eval-
uation, for a period not to exceed 60 days from the date
of the commitment order." (Emphasis added.)

Consequently, trial court *sua sponte* psychiatric
referral without opportunity for a hearing, as in
the instant case, is a clear violation of Rule 786.4
as well as a denial of individual liberty proscribed
by the constraints of due process.

Appellant suggests that trial courts have the
discretionary authority to *sua sponte* refer defend-
ants to unlicensed psychiatric clinics in order to
determine whether or not action under Rule 786.4
is in order, *i.e.* trial courts need not comply with
786.4 in the first instance:

"Appellant takes the position that the trial court,
under some circumstances, may not wish to proceed to
trial without first referring the defendant to the court's
clinic psychiatrist for a preliminary examination to see
if there is any indication that such a defendant should
be referred for diagnostic study for a report on his
competency or incompetency to stand trial."

The trial court's commendable effort to educate
itself about the particulars of defendant's compe-
tency is appreciated. However, the problem is that
the trial court cannot infringe upon defendant's

liberty without concomitant consideration of defendant's due process rights.[2]

Rule 786.4 was carefully drafted to protect individual rights and liberties while at the same time recognizing the state's interests in providing a fair trial and protecting incompetents. The use of a procedure which, in effect, creates a new class of competency referrals, short-circuiting Rule 786.4 and the demands of due process cannot be sanctioned by this Court.[3]

Accordingly, we answer the first question posed in the negative. Commitment for psychiatric evaluation of competency may not take place without, at the least, notice and opportunity for a hearing.

### III. *Can Potentially Incompetent Individuals be Committed to Uncertified Psychiatric Facilities?*

The crux of this second question posed is whether trial courts must fully comply with Rule 786.4 in situations like the one at bar, for 786.4 undeniably calls for commitment "to an approved diagnostic facility certified by the department of mental health" following a "showing" satisfying the trial court that defendant "may" be incompe-

---

[2] The result of commitment without hearing might often be an *unnecessary* deprivation of liberty. This is an abuse due process considerations serve to avoid, *e.g.:*

"Securing a mental examination must not be made overly difficult if, both from its own point of view and that of the defendant, the state is to satisfy its obligation to provide a fair trial. But, at the same time, the ease with which in-hospital examinations may be obtained must not be permitted to result in a needless deprivation of liberty by allowing the accused to be confined unnecessarily." *Id.,* 473–474.

This same concern about avoiding unnecessary commitments should guide trial courts properly acting under Rule 786.4.

[3] Any indications to the contrary in *People v Doerfer,* 46 Mich App 662; 208 NW2d 521 (1973), and *People v Kerridge,* 20 Mich App 184; 173 NW2d 789 (1969), are expressly overruled.

tent (MCLA 767.27a[3]; MSA 28.966[11] [3]) and that commitment for evaluation is warranted.

We agree with appellee that the trial court judgment that psychiatric referral is necessary is a judgment that defendant *may* be incompetent to stand trial within MCLA 767.27a; MSA 28.966(11).[4] As a result, holding a show-cause hearing under Rule 786.4 is mandated. That the court actually thought defendant might be incompetent is further buttressed in the instant case by the fact that defendant was referred on subsequent occasions by the court to Recorder's Court Psychiatric Clinic. Certainly these referrals, all connected with the same proceedings, reflect a judicial conclusion, at the very least, that defendant "might" be incompetent to stand trial.

We concur in the holding of the Court of Appeals:

"The court having raised the issue of defendant's competency to stand trial, was obligated to issue an order for the defendant to show cause why he should not be committed to an approved diagnostic facility for a psychiatric evaluation and to hold a hearing to determine the defendant's competency." 46 Mich App 562, 565.

Accordingly, we answer the second question posed in the negative. The judgment of the trial

---

4 "Appellant overlooks one important point. When a trial court refers a defendant to a psychiatric facility for an evaluation or for an examination, that act itself implies a judgment on the part of the court. And the judgment which is implied is that the defendant may be incompetent to stand trial.

"There would be no other reason for the trial court to refer a defendant to a psychiatric facility for study since all defendants are not so referred. If a particular defendant is referred to a psychiatric facility for evaluation on the court's own motion, it must be inferred that the court had before it some data or information which indicated to the court that the defendant was may be *[sic]* incompetent to stand trial." (Appellee's brief, p 4.)

court that psychiatric referral for evaluation of defendant's competency to stand trial was necessary was a judgment that defendant "might" be incompetent to stand trial. As a result, a show-cause hearing should have been held and, assuming the defendant advanced no compelling reasons why he should not be so committed, temporary commitment *to a certified facility* for psychiatric evaluation of competency should have been ordered under Rule 786.4.

## IV. *Can a Defendant Be Declared Competent Without Benefit of an Adversary Hearing?*

Upon receiving the report on defendant from the Recorder's Court Psychiatric Clinic, Presiding Judge Evans entered the following docket journal entry on August 13, 1971:

"Report received from psychiatric clinic. Court finds defendant able to stand trial and so orders."

Subsequently, in denying defense counsel's motion for mistrial based on the competency determination procedure, Judge Poindexter relied, *inter alia,* on the clinic determination of competency:

*"The Court:* Before the jury returns, Mrs. Ritter, there are two motions—you made two motions for mistrial—one of them relates to the possibility that the defendant might be insane.

"The court has checked the file in the interim and finds that according to the file there has been no motion to refer the defendant to Ionia; neither has there been any notice of defense of insanity in this case and *when the defendant was referred to the Recorder's Court Clinic the report was made that* [sic] *was of sound mind and able to stand trial.*

"The Court will deny your motion." (Emphasis added.)

The question which arises from this record is whether this determination of competency could be lawfully reached without giving defendant an opportunity for an adversary hearing? We hold that it could not.

The court rule involved clearly contemplates a hearing. GCR 1963, 786.5 reads as follows:

".5 When a defendant has been committed to an approved diagnostic facility certified by the department of mental health for the performance of forensic psychiatric evaluation, the motion to commit the defendant to the department of mental health *shall stand adjourned pending receipt of the diagnostic report and recommendation of the facility.*" (Emphasis added.)

GCR 1963, 786.7 reads:

".7 *If upon the hearing on the motion* the defendant shall be adjudged incompetent to stand trial, he shall be committed to the department of mental health pursuant to PA, 1966, No 266, and the pending criminal proceedings against such defendant shall stand adjourned until the further order of the court." (Emphasis added.)

As noted in Section II of this opinion, *supra,* Rule 786.4 requires a show-cause hearing prior to temporary commitment for competency evaluation. Such a hearing is held, the court rule indicates, under the aegis of a "motion to commit the defendant to the department of mental health". Rule 786.5 indicates that should the 786.4 hearing result in an order of competency evaluation commitment, "the motion to commit the defendant to the department of mental health shall stand ad-

journed pending receipt of *diagnostic report and recommendation of the facility"*. Rule 786.7 then picks up the thread, "[i]f upon hearing the motion". This indicates that after the diagnostic report is received there must be a motion to determine competency or incompetency. Obviously a hearing cannot be held teleologically with only one result in mind as that would not be hearing but a farce. The hearing is to determine the truth whether the defendant is or is not competent and the diagnostic report is only evidence and not necessarily conclusive evidence. Rule 786 is elliptical in describing in Rule 786.7 what happens when the defendant is found incompetent without also in that or another subsection describing what happens if the defendant is found competent. However, in the case of competency, unlike incompetency, there is no question what happens next; there is only one possibility and that is to go to trial. In any event, once there has been a motion to test defendant's competency, either competency or incompetency cannot be declared except after an adversary hearing.

To hold otherwise would be to elevate the psychiatric report, standing alone, to an unimpeachable, dispositive status without giving the defendant opportunity to rebut. Not only is such a procedure not within the contemplation of Rule 786, it is in blatant disregard of due process. Again, as Section II of this opinion points out, deprivation of liberty through psychiatric commitment of any sort is an action which is clearly impermissible unless and until the demands of due process are met, at minimum the requirements being notice[5] and opportunity for an adversary hearing. The State of

---

[5] In this context, "notice" would obviously include supplying defendant a copy of the psychiatric report submitted to the trial court.

Michigan, acting through the trial court under Rule 786.7, does not have the power to involuntarily confine an individual without first obtaining a judicial determination that confinement is warranted, such determination being surrounded by the constitutionally necessary procedural safeguards including an adversary hearing. *Cf. McNeil v Director, Patuxent Institution, supra.*

Accordingly, we answer the third question posed in the negative. Trial courts may not declare a defendant competent to stand trial, or incompetent to stand trial for that matter, once the question of competency has been raised, without at the least, affording the defendant the opportunity for a full adversary hearing.

## V. *Preliminary Trial Court Investigation Prior to Action Under GCR 1963, 786.4.*

As noted in Section II of this opinion, *supra,* appellant argues that trial courts must have some discretionary authority to make investigations *prior* to deciding whether Rule 786.4 action, including a show-cause hearing, is in order. Without such power, appellant contends, trial courts often will not have enough information before them to determine whether there has been a "showing" made within the dictates of MCLA 767.27a(3); MSA 28.966(11)(3) that "defendant may be incompetent to stand trial". Appellant concludes:

"Defendant has rights and should not be summarily committed for diagnostic study unless there are factors indicating this is necessary."

The implication is that failure to invest the trial court with preliminary investigatory powers before

mandating action under Rule 786.4 will result in needless commitment on many occasions.[6]

Without question, appellant raises some good points. However, appellant misconceives the import of the term "showing" in MCLA 767.27a(3); MSA 28.966(11)(3) which reads in relevant part:

"(3) *Upon a showing* that the defendant may be incompetent to stand trial, the court *shall commit* the defendant * * * ." (Emphasis added.)

The "showing" referred to in the statute is *not* a "preliminary" showing that a Rule 786.4 "show cause" hearing is desirable, the reference is to the ultimate showing of possible incompetency mandating trial court commitment for evaluation.[7]

Obviously, what appellant is talking about is not a "showing" under the statute. What he is talking about is information for the trial court to improve its personal judgment in determining whether to issue a motion *sua sponte* under Rule 786 to test defendant's competency. What appellant is talking about is what inherent powers of investigation does the trial court possess prior to finding it desirable to initiate action itself under Rule 786.4?

We are sympathetic with the trial court's concern. In our meetings with all the circuit judges earlier this year, this problem was constantly raised and much sincere concern shown. This matter concerns this Court too and the matter is under serious study.

---

[6] "Commitment, even briefly for examination, can be a traumatic experience for the defendant, particularly one who may be on the borderline of mental illness." Leavy, *The Mentally Ill Criminal Defendant,* 9 Crim Law Bull 197, 219 (1973).

[7] Such a "showing" is automatically made, under the court rule, if defendant requests commitment for competency evaluation under Rule 786.3. In any other case, the statutory "showing" is not made, if it is made at all, until after a show-cause hearing under Rule 786.4.

The critical problem, even though the trial court is animated by a concern not to embarrass the defendant, is what can the trial court do effectively without colliding with the defendant's constitutional rights. In this opinion we have seen that the court cannot informally commit defendant against his will for evaluation. We will not here go into the question of the validity of defendant waiving his rights. In short, most, if not all, avenues of information for the trial court to obtain information about the defendant's competency through the defendant himself are limited to Rule 786 procedures.[8]

Whether the trial court has unilateral access to persons other than the defendant to secure information, such as the defendant's family or previously employed psychiatrists is a question not without some difficulties.

In short, this whole area is a prickly one that

---

[8] The Rule 786.4 hearing should provide the trial court with the bulk of the information necessary to make an informed decision on the motion to commit. Note the following discussion:

"Since the determination of incompetency is ultimately a judicial as opposed to a medical finding, it is essential that the court possess adequate information upon which to base an independent, informed decision about the defendant's competency. Without such data, the court's final determination can be little more than a mere affirmation of the hospital staff's conclusions. Indeed, because commitment to a mental institution is as severe a deprivation of liberty as any other form of involuntary imprisonment, the due process clause of the fourteenth amendment demands that an informed, rather than perfunctory, decision be made if a critical departure from traditional notions of fundamental fairness is to be avoided. Therefore, holding a full evidentiary hearing at which the defendant has the right to be represented by counsel, at which both parties are given an opportunity to examine all witnesses that testify about the defendant's competency, and at which each side may present its own evidence in opposition to that of the hospital appears to be an inescapable necessity. Such a hearing would both ensure that the accused's due process rights were protected and enable the court to acquire the necessary information to make an educated and dispassionate decision about the defendant's competency." (Footnote omitted.) Kaufman, *supra,* n 1, pp 479–480.

requires very careful and deliberate consideration.[9]
This Bench hopes to undertake that with its other
partners in Michigan's "one court of justice".

## VI. *Conclusion*

We hold that no involuntary commitment for
psychiatric evaluation of competency may take
place without, at the least, notice and opportunity
for a hearing.

We hold further that a trial court judgment that
psychiatric referral for evaluation of competency
is necessary is implicitly a judgment that defend-
ant "might" be incompetent. Accordingly, the trial
court must act under GCR 1963, 786.4 and hold a
show-cause hearing on the court's *sua sponte* mo-
tion to commit defendant for evaluation. Should
the show-cause hearing bear out the trial court
judgment that defendant "might" be incompetent,
and, given no compelling reasons why defendant
should not be so committed, the court should order
temporary commitment for evaluation to a facility
certified by the Department of Mental Health as
provided by Rule 786.4.

We hold finally that trial courts may not declare
a defendant competent to stand trial, or incompe-
tent to stand trial, once the question of compe-
tency has been raised, without, at the least, afford-
ing the defendant the opportunity for an adver-
sary hearing.

For these reasons, the trial court denial of de-
fendant's motion for mistrial due to improper

---

[9] In the process of such consideration, we are well aware that other
significant constitutional considerations may be involved in compe-
tency practice and procedure. For example, defendants might point to
investigatory techniques which allegedly violate their privilege
against self-incrimination or which allegedly subject them to unfair
prosecutional discovery without reciprocity.

psychiatric referral was erroneous. Defendant did not receive the benefit of his due process rights. The trial court is reversed and this cause is remanded for new trial.

The Court of Appeals is affirmed.

T. M. KAVANAGH and SWAINSON, JJ., concurred with WILLIAMS, J.