PEOPLE *v.* ELBERT

1. CRIMINAL LAW—PROBATION—VIOLATION—NOTICE TO PROBATIONER
   —HEARING—REVOCATION—STATUTES.
   A probationer is entitled, by statute, to a written copy of a
   charge of probation violation and to a hearing on that charge
   (MCLA § 771.4).

2. CRIMINAL LAW—PROBATION—VIOLATION—REVOCATION—EVIDENCE
   —SCOPE.
   A revocation of probation decision must be based solely on evi-
   dence relating to the probation violation charge.

3. CRIMINAL LAW—PROBATION—VIOLATION—REVOCATION—FINALITY.
   A decision to revoke probation is tantamount to a resolve to in-
   carcerate a defendant since there is no middle ground—either
   a defendant is on probation or he is in jail.

4. CRIMINAL LAW—PROBATION—VIOLATION—REVOCATION—FINALITY.
   Judge's announced decision to revoke defendant's probation
   was provisional, not final, where the trial judge informed de-
   fendant, before he waived counsel and pled guilty to probation
   violation, that probation violators generally go to jail and
   that a jail sentence was a possibility, not a probability, in
   his case.

5. CRIMINAL LAW — PROBATION — VIOLATION — REVOCATION —
   BASES — FINALITY.
   A final decision to revoke defendant's probation was error where
   that decision was based on charges of acts which the pro-
   bation order did not require the defendant to refrain from
   committing and those charges were not stated in the statutory
   notice of probation violation or mentioned in open court be-
   fore defendant pled guilty (MCLA § 771.4).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 568.
[2, 5] 21 Am Jur 2d, Criminal Law §§ 527, 564, 568.
[3, 4] 21 Am Jur 2d, Criminal Law §§ 567, 568.
[6] 21 Am Jur 2d, Criminal Law §§ 563, 568.

6. Criminal Law—Probation—Violation—Revocation—Waiver of
   Counsel—Plea of Guilty.

    A probationer's waiver of counsel and plea of guilty to violation
   of probation charges immediately following even a guarded
   intimation from a judge that the probationer may anticipate
   leniency is suspect since a frightened, untrained and possibly
   unsophisticated probationer is likely to be misled by any in-
   timation from a judge who, as the probationer knows, holds
   his fate in his judicial hands.

Appeal from Genesee, Anthony J. Mansour, J.
Submitted Division 2 November 10, 1969, at Lansing.
(Docket No. 7,035.)   Decided February 6, 1970.

James M. Elbert's probation was revoked after
he pled guilty of violating conditions of his proba-
tion. Defendant appeals. Reversed and remanded
with instructions.

*Frank J. Kelley*, Attorney General, *Robert A.
Derengoski*, Solicitor General, *Robert F. Leonard,*
Prosecuting Attorney, *Donald A. Kuebler,* Chief
Assistant Prosecuting Attorney, and *James Joseph
Lewis*, Assistant Prosecuting Attorney, for the peo-
ple.

*Thomas R. McCombs,* for defendant on appeal.

Before: Levin, P. J., and T. M. Burns and Dan-
hof, JJ.

Levin, P. J.   The defendant was convicted of
breaking and entering[1] upon his plea of guilty and,
on November 29, 1967, was placed on probation for
three years. He was later charged with violating
conditions of his probation, pled guilty and was
sentenced to serve a term in state prison. He now
appeals.

---

[1] MCLA § 750.110 (Stat Ann 1962 Rev § 28.305).

The alleged probation violations were that the defendant had failed to report to his probation officer in the months of May and September, 1968 and that he was $14 in arrears in paying court costs.[2]

At a hearing on November 25, 1968 the court explained the probation violation charges and the following colloquy then ensued:

*"The Court:* And do you understand that if the terms of the probation order are violated that a person, instead of being allowed to remain in the community, generally is sent to prison?
*"The defendant:* Yes.
*"The Court:* And do you understand, that is, if not a probability, at least a possibility in this case? Do you understand that?
*"The defendant:* Yes.
*"The Court:* Now, understanding the seriousness of this matter, is it your wish that you be represented by an attorney in this matter?
*"The defendant:* No."

The defendant then pled guilty and the court thereupon revoked probation; sentencing was deferred.

Two days later, November 27, 1968, the defendant appeared in court for sentencing. On being asked by the judge whether he wished an attorney, he again replied in the negative. The judge then said that the defendant seemed to be performing well on probation until May, 1968,

*"The Court:* * * * But then apparently something happened, you became unemployed, and you started a series of threats and other problems with your family. And, although the technical violations

---

[2] As a condition of probation the defendant was required to pay court costs of $272, $72 was to be paid at the rate of $2 per month and the balance within two years. A statutory condition of probation required that he report to his probation officer monthly. MCLA § 771.3 (Stat Ann 1954 Rev § 28.1133).

of your probation for which you are before the court today are not serious in and of themselves, they, coupled with your actions since your being placed on probation, seem to indicate that you are not now, at least, a good probation risk.

"Is it true that you have become unemployed since we put you on probation?

"*The defendant:* For the last month I have been working with my brother-in-law, Art's Auto Collision.

"*The Court:* That has not been a steady employment though, has it?

"*The defendant:* (No audible response)

"*The Court:* That has not been steady employment. And you have had some problems with your father and your mother, haven't you?

"*The defendant:* Yes.

"*The Court:* Well, if you will recall, at the time I put you on probation I told you that we would hope you wouldn't violate your probation; and I said at that time that I make this guarantee to you: that if you do violate the terms of your probation, it won't be any question about what you would get, some prison time.[3]

"And, unfortunately for you, you have not kept your part of the bargain; and I am going to have to keep my part of the bargain."

The defendant was then sentenced to serve nine to ten years in state prison. For reasons we now state we reverse and remand for a new hearing.

Although the judge told the defendant before he waived counsel and pled guilty that probation violators generally go to jail and that this was a serious matter, he also told the defendant that a jail sentence was a possibility, not a probability, in

---

[3] At the time the defendant was placed on probation the judge said: "I can make this guarantee to you, that if you do violate the terms of probation, there won't be any question but you will get some prison time."

his case.    No doubt the defendant was greatly re-
lieved to hear this, particularly if he recalled the
judge's "guarantee" (see footnote 3) that if he vio-
lated the terms of probation he would be sentenced
to the penitentiary.

It also appears that the judge did not view the
charged violations as serious; he thought they were
"technical violations."    The factors which tipped the
scales were the defendant's unemployment and argu-
ments with his parents.    It was not, however, a
condition of probation that the defendant obtain
and retain employment and that he avoid argu-
ments with his parents.[4]

Under the statute (MCLA § 771.4 [Stat Ann 1954
Rev § 28.1134]) a probationer is entitled to a written
copy of a charge of probation violation and to a
hearing thereon.[5]    Only evidence relating to the
charge may be considered and on the basis of that
evidence alone is the decision whether to terminate
or revoke the probationary order to be made.[6]

We recognize that the judge's announcement, at
the conclusion of the first hearing, that he was re-
voking the defendant's probation was made before
he became aware of the defendant's unemployment
and arguments with his parents.    That announce-
ment was, however, clearly provisional.    We say this
because a decision to revoke probation is tanta-
mount to a resolve to jail the defendant in the state
penitentiary; there is no middle ground—either a
defendant is on probation or in jail.    And we can-
not ascribe to the judge a final resolve at the con-
clusion of the first hearing to sentence the defend-

---

[4] It appears from the record that the defendant, who is charged
with having arguments with his parents, is a married man with
children of his own.

[5] See *In re Bobowski* (1946), 313 Mich 521, 523; *People* v. *Wood*
(1966), 2 Mich App 342, 348.

[6] See *People* v. *Sutton* (1948), 322 Mich 104, 111; *People* v.
*Davenport* (1967), 7 Mich App 613; *cf. People* v. *Wood, supra*, p 348.

ant to the penitentiary under the circumstance that he had just minutes before advised the defendant that a penitentiary sentence was a possibility, not a probability, and the defendant waived counsel and pled guilty immediately following that statement of the judge.[7]

We are, therefore, persuaded that the announced decision, at the conclusion of the first hearing, to revoke probation was a nominal or provisional, and not a final, revocation, and that the final decision to revoke, to jail the defendant, was based on charges of acts which the order of probation did not require the defendant to refrain from committing.[8] Furthermore, such charges were not stated in the notice of probation violation or mentioned in open court before the defendant pled guilty.

We recognize that in sentencing a judge may take into consideration factors other than those upon which an accused person's conviction is based. We can also appreciate, however, that an accused person who has been "guaranteed" a jail sentence if he again appears in court might well conclude, in the few seconds that intervened in this case between the judge's statement and his queries as to whether the defendant wished to waive counsel and plead guilty, that his salvation lies in placing himself in the judge's hands; that he might turn a possibility of a jail sentence into a probability of a jail sentence if he shows a lack of confidence in the judge's evaluation and prediction by demanding counsel and contesting the probation violation charges.

---

[7] No additional information regarding the nature of the charges against the defendant or his history on probation was furnished the judge in the intervening minutes between the judge's statement that prison was a pssibility, not a probability, and his statement revoking probation upon defendant's plea of guilty.

[8] See *People* v. *George* (1947), 318 Mich 329, 332; *People* v. *Pippin* (1946), 316 Mich 191, 196; *People* v. *Sutton, supra,* p 109.

While a lawyer would realize that the judge's statement was not a promise of probation, a frightened, untrained and possibly unsophisticated defendant groping for straws is likely to be misled by any intimation from a judge who, even the untutored know, holds in his hands a prisoner's fate. A waiver of counsel and plea of guilty immediately following even a guarded intimation from a judge that the defendant may anticipate leniency is suspect.

In this case we think the defendant should be given another opportunity to demand counsel and to plead to the probation violation charges. Accordingly, he is remanded to the custody of the sheriff of Genesee county for further proceedings on the probation violation charges lodged against him.[9]

Reversed and remanded.

All concurred.

---

[9] The court may, indeed, revoke a probationary order if it becomes satisfied that "the probationer is likely again to engage in an offensive or criminal course of conduct, or that the public good requires revocation or termination of probation;" furthermore, a probation order may be revoked for any "type of antisocial conduct or action on the part of the probationer which shall satisfy such court that revocation is proper in the public interest." MCLA § 771.4 (Stat Ann 1954 Rev § 28.1134). But, if that is the basis upon which a probationary order is to be revoked, the probationer must be notified that it is so charged and a hearing on that charge must be held. See *People* v. *Sutton, supra,* p 111; *People* v. *Davenport, supra.*