PEOPLE v MARTIN

1. CRIMINAL LAW—PROBATION REVOCATION—PROCEDURES—STATUTES
   —COURT RULES—INCOMPETENCY.

   A probation revocation proceeding is not a criminal trial and,
   therefore, the statute and court rule which provide the proce-
   dures to be followed when an accused may be incompetent to
   stand trial are not per se applicable to such a proceeding
   (MCLA 767.278; GCR 1963, 786).

2. CRIMINAL LAW—PROBATION REVOCATION—PROCEDURES—RIGHTS OF
   ACCUSED—NATURE OF PROCEEDINGS—ASSISTANCE IN DEFENSE.

   The full panoply of rights constitutionally guaranteed in a crimi-
   nal trial do not attach to probation revocation proceedings, but
   it has been held that one accused of probation violation has the
   rights to counsel, to produce witnesses, to notice of the charges
   against him, and to an opportunity to explain away the charge
   filed against him; the defendant must understand the nature
   and object of the proceedings and be able to assist in his
   defense in a rational way.

3. CRIMINAL LAW—INCOMPETENCY—DUE PROCESS—HEARING—LOSS OF
   LIBERTY.

   The *ratio decidendi* of the Federal decisions which have held that
   it is a violation of due process to convict an accused who is
   legally incompetent and that a competency hearing must be
   held when the evidence raises a bona fide doubt of an accused's
   competency applies to any proceeding in which a defendant
   risks loss of his liberty.

4. CRIMINAL LAW—PLEA OF GUILTY—PROBATION VIOLATION—BONA
   FIDE DOUBT—COMPETENCY.

   It is improper to accept a plea of guilty to a probation violation
   where a bona fide doubt is raised regarding a defendant's
   ability to understand the nature of the charges against him.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4, 6] 21 Am Jur 2d, Criminal Law §§ 567, 568
[3] 21 Am Jur 2d, Criminal Law §§ 31, 36
[5] 21 Am Jur 2d, Criminal Law §§ 55 *et seq.*

5. CRIMINAL LAW—APPEAL AND ERROR—INCOMPETENCY—EVIDENCE— PREJUDICE.

The only relief to be granted by an appellate court where a defendant seeks a reversal of his conviction because of claimed incompetency but where no evidence was adduced regarding his competency to stand trial is an affirmance without prejudice to defendant's filing of a motion for a new trial.

6. CRIMINAL LAW—PROBATION REVOCATION—PROCEDURES—INCOMPE- TENCY—EVIDENCE—PSYCHIATRIC EVALUATION—COMMITTAL.

A trial court shall refer a defendant in a probation revocation hearing for psychiatric evaluation where sufficient factual data is presented at the hearing to raise a bona fide doubt as to the defendant's competency, and where the judge determines from such referral that the defendant is incompetent to understand the nature of the proceedings and to assist counsel, he shall order the defendant committed under the appropriate statutes.

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted Division 1 February 6, 1975, at Lansing. (Docket No. 18071.) Decided May 27, 1975. Leave to appeal applied for.

George H. Martin was convicted of violation of probation. Defendant appeals by leave granted. Remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Field & Field,* for defendant on appeal.

Before: BASHARA, P. J., and R. B. BURNS and M. J. KELLY, JJ.

BASHARA, P. J. This is an appeal by leave granted of defendant's conviction for violating the terms of his probation.

Defendant was placed on 3 years probation on March 20, 1969, after having been found guilty of carnal knowledge of a female minor. MCLA 750.520; MSA 28.788. On June 8, 1970, a warrant for probation violation was issued alleging that (1) defendant has failed to report to his probation officer since December of 1969, (2) that defendant has failed to pay $150 in assessed costs, and that (3) he moved without notifying the authorities.

A preliminary revocation hearing was held on February 18, 1971. Defendant, after having been informed of the charges, was granted an adjournment to retain counsel. The revocation hearing was held on February 24, 1971, where the following colloquy occurred:

"*Mr. Kates [attorney for defendant]:* Your Honor, he has informed me and I think, your Honor, the Court, fully reflects that, the report fully reflects that, that Mr. Martin sustained an injury in 1960, that he has had a lot of trouble as a consequence of this injury at work and the doctors indicated there is some brain damage.

"He had some brain surgery performed. These scars are still showing on his head.

\* \* \*

"*The Court:* Well, he has pled guilty. I will refer him to our clinic and get a current report and he will be sentenced on March 16th."

On March 16, 1971, the probation revocation proceedings were resumed. The court had before it the recorder's court psychiatric clinic report which was paraphrased by the judge as follows:

"The clinic said he is retarded and he has a very poor memory. Head injuries several years ago, complained of headaches ever since. He has very weak control over his impulses, lost considerable weight in the last few

years. A possibility of some more serious illnesses. There should be a further check.

"Worked at the New Haven Foundry; was injured and is in the process of obtaining disability,—a serious injury; on top of that he is a very sick man. * * * He has no discretion mentally. *Often doesn't understand the Court proceeding in relation to the charge.* He would not cooperate. He is a danger to the community and should be incarcerated. * * * He isn't being brought back for having repeated this kind of a sexual activity. * * * The clinic is of the opinion that he is not, he has not curbed his drinking habit which usually causes him to lose sight of the impulses towards offenses of this nature." (Emphasis supplied.)

Defense counsel then requested an adjournment so that defendant could be observed at the forensic center. The court then stated:

"*The Court:* They don't recommend it in the first place. They say he is retarded. There are a lot of retarded people, but they are not psychotic.

"*Mr. Kates:* As the Court knows our doctors say that the defendant is functional, that he has an organic brain disorder,—damage, from this head injury.

"*The Court:* They don't quite say that. They say something else, but I won't repeat it. If you want to come up here and look at it I will show you.

"*Mr. Kates:* All right.

\* \* \*

"*The Court: On the other hand he is not so deficient mentally that he does not know what he is doing and does not understand the Court procedure in his relationship to it. They all say that.* (Emphasis supplied.)

"*Mr. Kates:* I understand that a defense was entered in the felonious assault case [another case pending against defendant]. The judge is going to wait for a forensic report on him.

"*The Court:* Well, normally we don't make up our minds without some advices, whether he should go to the Department of Mental Health for Forensic Psychia-

try. At least I will do that. I would get the advice of our clinic. I am not an expert in mental illnesses, so I rely on what the doctors say and referred him.

"*Mr. Kates:* The reason I say this the doctors say he sustained a serious head injury and I would like a recess and adjournment. We will get a doctor's report to submit to the Court.

\* \* \*

"*The Court:* Well, what bothers me he ought to be in a hospital and frankly speaking, it isn't likely, he isn't likely to get much in the way of proper medical treatment in view of his head injury and his drinking, and I am mindful of something else in this report, and he will certainly need expert care."

Following the above discussion, proceedings were adjourned to March 23, 1971. At that proceeding, the judge indicated that the recorder's court clinic suggested defendant should be institutionalized, that defendant would not cooperate in a convalescent home, and that defendant is a danger to the community and should be incarcerated. The judge further noted:

"He is retarded, had poor memory, resistive and offensive. Now, going into his head injuries sustained a number of years ago. That head injury may have reduced his tolerance for alcohol. If this is so then he can't take it and a few drinks would weaken his control of his hostile impulses.

\* \* \*

"If I put him on probation and suggest that he go to a hospital he wouldn't go. I wouldn't have any power to say to go to a certain hospital. I am not even convinced that he believes he ought to be in a hospital, for his own protection.

"*Mr. Kates:* Thats why I suggested to the Court that the defendant be sent to the Forensic Center for a full evaluation, a sixty-day committment.

"*The Court:* They don't suggest that. They can send

him to a hospital at the Corrections Commission. I will recommend it. That is as far as I am going."

Thereon defendant was sentenced to 5 to 10 years imprisonment.

Defendant first contends the trial judge erred by failing to order that he be committed to the forensic center for a determination of his competency to answer the probation violation charges. Defendant relies solely on MCLA 767.27a; MSA 28.966(11) and GCR 1963, 786. We note that these provisions address the procedures to be followed when an accused may be incompetent to stand trial. A probation revocation proceeding is not a criminal trial. *People v Hallaway,* 39 Mich App 74; 197 NW2d 335 (1972), *People v Wood,* 2 Mich App 342; 139 NW2d 895 (1966). Thus, the statute and court rule are not per se applicable to the case at bar.

MCLA 771.4; MSA 28.1134 grants an accused the right to a summary hearing when it is alleged that he has violated the terms of his probation. It is true the full panoply of rights constitutionally guaranteed in a criminal trial do not attach to these proceedings. However, it has been held an individual accused of violating his probation has the right to counsel, *People v Lott,* 12 Mich App 123; 162 NW2d 290 (1968), the right to produce witnesses, *In re Bobowski,* 313 Mich 521; 21 NW2d 838 (1946), the right to notice of the charges against him, *In re McLeod,* 348 Mich 434; 83 NW2d 340 (1957), and the right to an opportunity to explain away the charges filed against him, *People v Martinez,* 20 Mich App 319; 174 NW2d 14 (1969). We believe these cases indicate a minimum requirement that the hearing must be conducted in a meaningful way. It would be fundamentally unfair to require a revocation hearing and then not ensure the safeguard that defendant under-

stands the nature and object of the proceedings against him and that he is able to assist in his defense in a rational way. *Dusky v United States,* 362 US 402; 80 S Ct 788; 4 L Ed 2d 824 (1960).

Although the competency to stand trial statutes and court rule do not exactly apply, it must be recognized that they were enacted to comply with *Pate v Robinson,* 383 US 375; 86 S Ct 836; 15 L Ed 2d 815 (1966). *Pate* announced that a competency hearing must be held when the evidence raises a bona fide doubt of an accused's competency. *People v Russell,* 20 Mich App 47; 173 NW2d 816 (1969), *People v Sherman Williams,* 38 Mich App 370; 196 NW2d 327 (1972). The fountainhead decision in incompetence law, *Bishop v United States,* 350 US 961; 76 S Ct 440; 100 L Ed 835 (1956), held that it is a violation of due process to convict an accused who is legally incompetent. We believe that the *ratio decidendi* of these decisions applies to any proceeding in which a defendant risks the loss of his liberty.

We conclude that it would be improper to accept a plea of guilty to a probation violation where a bona fide doubt is raised regarding defendant's ability to understand the nature of the charges against him. Here the court's own clinic report indicated that defendant "often does not understand the court proceeding in relation to the charge". An attorney who represented defendant for the first time at an adjourned hearing requested that defendant be referred for a forensic evaluation.

We recognize that our Supreme Court has recently decided a trilogy of cases outlining the procedure to be followed when incompetency to stand trial has been alleged. *People v Lucas,* 393 Mich 522; 227 NW2d 763 (1975), *People v Parker,*

393 Mich 531; 227 NW2d 775 (1975), *People v Blocker,* 393 Mich 501; 227 NW2d 767 (1975). However, the facts in those cases can be distinguished from the instant case. Those cases held that where no evidence is adduced regarding defendant's competency to stand trial the only relief to be granted is an affirmance without prejudice to defendant's filing of a motion for a new trial. Here the trial court had sufficient factual data to raise a bona fide doubt as to defendant's competency.

Accordingly, we remand to the trial court for the purpose of ordering a referral to the center for forensic psychiatry. If, after receiving the report from the center, the trial judge shall determine that defendant was incompetent to understand the nature of the proceedings and to assist counsel, he shall order the defendant committed under appropriate statutes. See MCLA 767.27a; MSA 28.966(11). If, after receiving the report, the trial judge shall determine that defendant was competent at the revocation proceeding, his conviction shall be affirmed.

Remanded for proceedings not inconsistent with this opinion. We retain no further jurisdiction.