PEOPLE v RIAL

PEOPLE v BEENE

Docket Nos. 57094, 57095. Argued May 6, 1976 (Calendar Nos. 4, 5).— Decided December 31, 1976.

Peggy Rial was convicted, on her plea of guilty, of possession of marijuana in Kalamazoo Circuit Court, Lucien F. Sweet, J., and sentenced to two years probation. George Beene was convicted, on his plea of guilty, of attempted larceny in a building in Kalamazoo Circuit Court, Raymond W. Fox, J., and sentenced to two years probation. The defendants were charged with violating probation and at their hearings they waived counsel, admitted the violations and were sentenced on the original convictions. Defendants appealed to the Court of Appeals (Docket Nos. 20249, 20250) and the Supreme Court *sua sponte* granted leave to appeal with other *Guilty Plea Cases*. 394 Mich 776 (1975). *Held:*

The court rule on the procedure for accepting a plea of guilty does not apply to probation violation proceedings. Probation revocation is not a stage of a criminal prosecution and the probationer as a convicted person is entitled to more limited rights of due process than one who is accused of a crime. Each defendant was adequately informed of his procedural and constitutional rights: that if he wished to contest the allegations of violations, a hearing would be held, and he would be entitled to counsel. There is no basis to believe that the defendants were unaware of the possible penalties before waiving their rights.

Justice Levin concurred in a separate opinion. He agreed that the statute and court rule governing acceptance of a plea of guilty to an information do not prescribe the advice to be given before acceptance of a plea of guilty to a charge of probation violation, and wrote separately of the need for rules

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 487, 492–495, 567, 568.
[2–7] 21 Am Jur 2d, Criminal Law § 568.
[8] 21 Am Jur 2d, Criminal Law §§ 565, 568.
[9] 21 Am Jur 2d, Criminal Law §§ 566, 571.
[10] 21 Am Jur 2d, Criminal Law §§ 567, 568.

for probation violation proceedings. He also wrote that in the case of Rial the revocation of probation is not adequately supported by evidence in the record, an issue not raised on her appeal. While the procedures followed are more informal than at a trial, court decisions have established minimum procedural requirements, and the record should reflect that a defendant desiring to plead guilty of probation violation was so informed of his constitutional rights and of the incidents of a probation violation hearing as reasonably to warrant the conclusion that he understands what such a hearing is and that in pleading guilty he is knowingly and voluntarily giving up his right to a hearing and those rights and incidents. A court rule stating the procedure to be followed in probation violation hearings and the nature of the advice to be given would provide an objective basis for evaluating claims that a plea of guilty of violation was not understandingly, knowingly, and voluntarily made.

Affirmed.

OPINION OF THE COURT

1. CRIMINAL LAW—PLEA OF GUILTY—PROBATION REVOCATION.

The court rule on the procedure for accepting a plea of guilty does not apply to probation revocation proceedings (GCR 1963, 785.7).

2. CRIMINAL LAW—PROBATION REVOCATION—DUE PROCESS.

Probation revocation is not a stage of a criminal prosecution; revocation proceedings deal not with the procedural rights of an accused in a criminal prosecution but with the more limited due process rights of a probationer who has been convicted of a crime.

3. CRIMINAL LAW—PROBATION REVOCATION—PLEA OF GUILTY—CON-STITUTIONAL RIGHTS.

A probationer was adequately informed of his procedural and constitutional rights in proceedings to revoke probation where he was advised that if he wished to contest the allegations of violations of the conditions of probation, a hearing would be held and he would be entitled to counsel; he need not be again advised of the possible maximum and minimum sentence on conviction of the charge to which he originally pled guilty.

CONCURRING OPINION

LEVIN, J.

4. CRIMINAL LAW—PROBATION—REVOCATION—CONSTITUTIONAL RIGHTS.

*The full panoply of rights constitutionally guaranteed in a crimi-*

nal trial does not attach to probation violation proceedings, but a person accused of violating his probation has the right to counsel, the right to produce witnesses, the right to notice of the charges against him, and the right to an opportunity to explain away the charges filed against him, which indicates as a minimum requirement that the hearing must be conducted in a meaningful way.

5. CRIMINAL LAW—PROBATION—REVOCATION—CONSTITUTIONAL RIGHTS —APPEAL.

   A probationer is entitled to an appeal of right following determination of a probation violation on those matters relating to the probation violation and the hearing on it.

6. CRIMINAL LAW—PROBATION—REVOCATION—CONSTITUTIONAL RIGHTS.

   A person charged with violation of probation is entitled to advice regarding his constitutional and statutory right to a hearing and the nature of that right; the very informality of the hearing makes it especially important that there be advice and that it be transmitted in a meaningful manner.

7. CRIMINAL LAW—PROBATION—REVOCATION—CONSTITUTIONAL RIGHTS —PLEA OF GUILTY.

   The record of a probation revocation proceeding should reflect that a probationer desiring to plead guilty to a charge of probation violation has been so informed of his constitutional rights and of the incidents of a probation violation hearing as reasonably to warrant the conclusion that he understands what such a hearing is and that in pleading guilty he is knowingly and voluntarily giving up his right to a hearing and such rights and incidents.

8. CRIMINAL LAW—PROBATION—REVOCATION—PLEA OF GUILTY—ADVICE OF RIGHTS.

   A court rule stating the procedure to be followed in probation violation hearings and the nature of the advice to be given a probationer pleading guilty should be promulgated to provide an objective basis for evaluating claims that a plea of guilty of violation was not understandingly, knowingly, and voluntarily made.

9. CRIMINAL LAW—PROBATION—REVOCATION—PLEA OF GUILTY.

   Absent a court rule requiring advice regarding any minimum and the maximum sentence the judge may impose if probation is revoked or a factual predicate for a finding that a probationer

*pleading guilty of violation of probation was unaware of the sentence that might be imposed so that the plea was not understandingly, knowingly, and voluntarily made, there is no basis for reversal for failure to give such advice.*

10. CRIMINAL LAW—PROBATION—REVOCATION—ASSOCIATION.

*Absent a showing that a probationer's association with a person having a criminal record resulted or will result in the probationer becoming involved in further criminal activity, association alone does not tend to justify revocation of probation and imposition of a jail sentence.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *Stephen M. Wheeler,* Prosecuting Attorney, for the people.

*Robert L. Adams* for defendants.

PER CURIAM. Defendants' appeals were among the 114 transferred to our Court on May 28, 1975. 394 Mich 776 (1975). After our decision in *Guilty Plea Cases,* 395 Mich 96; 235 NW2d 132 (1975), we ordered that the defendants' appeals be jointly submitted and argued to consider the applicability of GCR 1963, 785.7 to probation violation proceedings. We conclude that subrule does not apply.

Defendant Rial pled guilty to possession of marijuana in 1973 and was placed on probation for two years. Defendant Beene pled guilty to attempted larceny in a building in 1972 and was also placed on probation for two years.

Bench warrants were subsequently issued for the arrest of both defendants for having violated the terms of their probations. At their initial hearings, both defendants waived their rights to appointed counsel and to a formal hearing on the charges. Both admitted that they had violated the terms of their probations. In each case, the trial

judge revoked probation and subsequently sen-
tenced the defendant pursuant to the original
conviction.

Defendants argue that, prior to the court's ac-
ceptance of a waiver of the right to a formal
probation violation hearing and to an attorney, the
court must advise a defendant of his rights at such
a hearing and also of the possible penalty involved
if probation were revoked. Defendants urge this
Court to equate a formal probation violation hear-
ing with a trial by imposing restrictions and stan-
dards on a defendant's admission of probation
violation which are similar to those imposed upon
a plea of guilty under Rule 785.7.

In *Gagnon v Scarpelli,* 411 US 778, 782; 93 S Ct
1756; 36 L Ed 2d 656 (1973), the United States
Supreme Court stated:

> "Probation revocation, like parole revocation, is not a
> stage of a criminal prosecution, but does result in a loss
> of liberty. Accordingly, we hold that a probationer, like
> a parolee, is entitled to a preliminary and a final
> revocation hearing, under the conditions specified in
> *Morrissey v Brewer, supra.* "[1]

Defendants' analogy to a trial and a guilty plea
is unsound. Probation revocation is not a stage of
a criminal prosecution. In these proceedings we
deal not with the procedural rights of an accused
in a criminal prosecution, but with the more lim-
ited due process rights of one who is a probationer
because he has been convicted of a crime. *Gagnon,
supra,* at 789. See also, *People v Pickett,* 391 Mich
305; 215 NW2d 695 (1974).

Defendants' reliance on MCLA 768.35; MSA

[1] Footnotes omitted. *Morrissey v Brewer,* 408 US 471; 92 S Ct 2593;
33 L Ed 2d 484 (1972).

28.1058 [2] is also misplaced. We are not concerned with a plea of guilty in these proceedings. The guilt of the defendants had already been determined. The scope of a probation violation hearing is limited. The procedure is summary and informal, not subject to the rules of evidence or pleadings applicable in criminal trials. MCLA 771.4; MSA 28.1134; *Morrissey, supra.* The hearing is designed to lead "to a final evaluation of any *contested* relevant facts and consideration of whether the facts as determined warrant revocation". *Morrissey, supra,* at 488. (Emphasis added.) A formal hearing is not required if the probationer admits at a preliminary hearing the alleged violations, and those violations are found by the court to be reasonable grounds for revoking probation under the law. *Morrissey, supra,* at 490.

Each defendant was advised by the court that if he wished to contest the alleged violations of his probation, a hearing would be held to determine the truthfulness of the charges, and he would be entitled to counsel at the hearing. Given the limited nature of these hearings, we hold that both defendants were adequately informed of their procedural and constitutional rights.

Defendants also contend that they were not advised of the possible penalty before waiving their rights to an attorney and to a formal hearing. Each defendant was aware that his probation

---

[2] "Whenever any person shall plead guilty to an information filed against him in any court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied after such investigation as he may deem necessary for that purpose respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed."

could be revoked as a result of these proceedings. This "penalty" is the direct result of a probation revocation hearing. What defendants actually argue is that the court should have again advised them of the possible minimum and maximum sentence which might be imposed following conviction for the crime to which they had originally pled. They ask this Court to rule that a waiver of their constitutional rights should not be accepted by the trial court until they again have been advised that if they have failed to comply with the terms of their probations, the court will sentence them for the crimes of which they were convicted. To adopt such a ruling would be to exalt form over substance.

Defendants do not allege that they were unaware of the penalty for the crime to which they pled guilty, nor do they allege that they were unaware that probation, in lieu of sentencing, was purely a matter of grace, and not of right. MCLA 771.4; MSA 28.1134. They do not allege that, at the time they entered onto probation, they were unaware of all the terms and conditions thereof, including the penalty for violation. It would be unrealistic for this Court to believe that a probationer willingly complies with all the strict terms and conditions of his probation, including regular meetings with his probation officer, without being aware of what might happen should he refuse to comply with those terms and conditions.

Under these circumstances, and particularly in light of the nature of probation violation hearings, defendants' arguments must fail.

Affirmed.

KAVANAGH, C. J., and WILLIAMS, COLEMAN, FITZ-GERALD, LINDEMER, and RYAN, JJ., concurred.

LEVIN, J. *(concurring)*. I agree that the statute[1] and court rule[2] governing acceptance of an accused person's plea of guilty to an information charging commission of a criminal offense do not prescribe the advice the judge should give a probationer before accepting a plea of guilty to a charge of probation violation.[3]

In these consolidated cases, the judges advised each of the defendants of their right to counsel[4] and of the nature of the charge. They both waived counsel and pled guilty.

I write separately to speak to the need for promulgation of rules of procedure concerning probation violation proceedings and to express my apprehension that in the case of Peggy Rial the decision revoking her probation is inadequately supported by record evidence, an issue concededly not raised in her appeal; if the issue had been raised remand for supplementation of the record would minimally be required.

I

While it has been said that a probation revocation proceeding is "not a stage of a criminal prosecution"[5] and that the procedures followed in such proceedings are more informal than at a trial,[6] the decisions of the United States Supreme Court,[7] of

---

[1] MCLA 768.35; MSA 28.1058.

[2] GCR 1963, 785.7.

[3] *See People v Hardin,* 70 Mich App 204, 206; 245 NW2d 566 (1976).

[4] *Mempa v Rhay,* 389 US 128, 137; 88 S Ct 254; 19 L Ed 2d 336 (1967).

[5] *Gagnon v Scarpelli,* 411 US 778, 782; 93 S Ct 1756; 36 L Ed 2d 656 (1973).

[6] *People v Wood,* 2 Mich App 342, 346; 139 NW2d 895 (1966). MCLA 771.4; MSA 28.1134.

[7] "The United States Supreme Court decided in *Morrissey v Brewer,* 408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972), as applied to

this Court and of the Court of Appeals have established minimum procedural requirements:

"It is true the full panoply of rights constitutionally guaranteed in a criminal trial do not attach to these proceedings. However, it has been held an individual accused of violating his probation has the right to counsel, the right to produce witnesses, the right to notice of the charges against him, and the right to an opportunity to explain away the charges filed against him. We believe these cases indicate a minimum requirement that the hearing must be conducted in .a meaningful way." *People v Martin,* 61 Mich App 102, 107; 232 NW2d 191 (1975) (citations omitted).

"[T]he probationer must be served with written notice

probation revocation proceedings in *Gagnon v Scarpelli,* 411 US 778; 93 S Ct 1756; 36 L Ed 2d 656 (1973), the minimum due process requirements for a probation revocation hearing:

" 'They include (a) written notice of the claimed violation of [probation]; (b) disclosure to the [probationer] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) *the right to confront and cross-examine adverse witnesses* (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body * * * ; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation].' *Morrissey v Brewer, supra,* 408 US at 489. (Emphasis supplied.)" *People v Smith,* 66 Mich App 639, 640; 239 NW2d 431 (1976).

The American Bar Association Standards Relating to Probation (Approved Draft, 1970) provide:

"5.4 Nature of revocation proceedings.

"(a) The court should not revoke probation without an open court proceeding attended by the following incidents:

"(i) a prior written notice of the alleged violation;

"(ii) representation by retained or appointed counsel; and

"(iii) where the violation is contested, establishment of the violation by the government by a preponderance of the evidence.

"Sentence should be imposed following a revocation according to the same procedures as are applicable to original sentencing proceedings.

"(b) The government is entitled to be represented by counsel in a contested revocation proceeding.

"(c) As in the case of all other proceedings in open court, a record of the revocation proceeding should be made and preserved in such a manner that it can be transcribed as needed.

"(d) An order revoking probation should be appealable after the offender has been resentenced."

of the charges against him prior to the hearing. *In re McLeod,* 348 Mich 434; 83 NW2d 340 (1957); *People v Wood,* 2 Mich App 342; 139 NW2d 895 (1966). At the hearing the probationer is entitled to produce witnesses and evidence as well as to cross-examine and confront witnesses. *In re Bobowski,* 313 Mich 521; 21 NW2d 838 (1946). The state must present proof of violation of the charges. *People v Myers,* 306 Mich 100; 10 NW2d 323 (1943). Evidence of the charge is the only factor to be considered in determining whether to revoke probation. *People v Sutton,* 322 Mich 104; 33 NW2d 681 (1948); *People v Elbert,* 21 Mich App 677; 176 NW2d 467 (1970). There must be a record of the hearing that demonstrates the due process requirements have been satisfied. *People v Wood, supra.* If the probationer desires, he is entitled to representation by counsel. *People v Kitley,* 59 Mich App 71; 228 NW2d 834 (1975); *People v Hazen,* 19 Mich App 576; 172 NW2d 860 (1969); *People v Brown,* 17 Mich App 396; 169 NW2d 522 (1969); *People v Marshall,* 16 Mich App 578; 168 NW2d 480 (1969). The probationer is entitled to an appeal as of right following determination of a probation violation on those matters relating to the probation violation and the hearing thereon. *People v Pickett,* 391 Mich 305; 215 NW2d 695 (1974); *People v Donald Moore,* 55 Mich App 139; 222 NW2d 64 (1974)." *People v Leroy Jackson, Jr,* 63 Mich App 241, 247–248; 234 NW2d 467 (1975).

Although neither statute nor court rule expressly requires that a judge advise a person charged with probation violation of his right to a hearing, it cannot be doubted that a probationer is entitled to advice regarding his constitutional and statutory right to a hearing and the nature of that right. The very informality of the hearing makes it especially important that there be advice and that it be transmitted in a meaningful manner. Most persons have at least a vague idea of what a trial is. Unless they have gone through the experience, few persons, even lawyers, will have any

conception of the nature of a probation violation hearing.

On the same principle which requires that an accused person pleading guilty to a criminal offense be informed of his constitutional rights and of the incidents of a trial "as reasonably to warrant the conclusion that he understood what a trial is and that by pleading guilty he was knowingly and voluntarily giving up his right to a trial and such rights and incidents",[8] the record should reflect that a probationer desiring to plead guilty to a charge of probation violation was informed of his constitutional rights and of the incidents of a probation violation hearing "as reasonably to warrant the conclusion" that he understands what such a hearing is and that in pleading guilty he is knowingly and voluntarily giving up his right to a hearing and such rights and incidents.

In *People v Becker,* 349 Mich 476, 487; 84 NW2d 833 (1957), an appeal from a probation revocation, it was observed:

"We reject, instanter, any thought that the defendant, because a convicted criminal, stands before us with any degree of vulnerability, that he is shorn of any of his constitutional rights. These guarantees, in truth, meet their real challenge when sought to be employed by the wicked. The upright and the righteous need them not."

The defendants contend that the judges' failure to advise them of the maximum sentences that might be imposed upon revocation of their probations requires that their guilty pleas be vacated. The memorandum opinion responds that the defendants did not allege that they were unaware of

---

[8] *Guilty Plea Cases,* 395 Mich 96, 122; 235 NW2d 132 (1975).

the penalty for the crimes to which they pled
guilty or of the penalty for probation violation.

Probationers may be expected in the future to
make the necessary allegations and to seek eviden-
tiary hearings on whether they understandingly,
knowingly, and voluntarily pled guilty. A court
rule stating the procedure to be followed in proba-
tion violation hearings and the nature of the
advice to be given would provide an objective basis
for evaluating such allegations.[9]

Such a court rule should require advice regard-
ing any minimum and the maximum sentence the
judge may impose if probation is revoked. While
the judge is required to provide such advice to a
defendant pleading guilty to an offense, a proba-
tioner may not have received such advice because
he was convicted at a trial or he may not under-
stand that on revocation of probation he will be
sentenced for the substantive offense of which he
was convicted, some time ago, not for the violation
of a condition of probation, often a seemingly
inoffensive matter, *e.g.,* failure to report to a pro-
bation officer, staying out after hours, consumption
of alcoholic beverages.

---

[9] The question in the instant cases differs from those presented in
*People v Smith, supra,* p 641, where the probationer did not plead
guilty and the Court of Appeals set aside the revocation of his
probation for the following reasons:

"Defendant, in the present case, was not afforded an opportunity to
confront and cross-examine adverse witnesses at his revocation hear-
ing. He was merely questioned by the trial judge who had no personal
knowledge of any facts showing violation of probation. Since we are
unable to find either an express waiver of defendant's right to
confront and cross-examine adverse witnesses on this record or good
cause stated by the trial court for not allowing confrontation, the
order revoking probation is set aside, the sentence vacated and
defendant remanded to the custody of the trial court without preju-
dice on the part of the court to conduct a proper hearing. Further-
more, we suggest that, in the event defendant's probation is again
revoked, his presentence report be updated, in order to insure accu-
rate information at sentencing. See *People v Malkowski,* 385 Mich
244, 249; 188 NW2d 559 (1971)."

Although the defendants assert that they should
have been given such advice in the instant cases,
absent a court rule requiring it or a factual predi-
cate for a finding that they were unaware of the
sentences that might be imposed and in conse-
quence their pleas were not understandingly,
knowingly, and voluntarily made, there is no basis
for reversal.[10]

---

[10] The question whether a defendant's awareness of the maximum
sentence is a factor to be considered in deciding whether a plea of
guilty to an offense is "understandingly and voluntarily made" was
recently considered in a separate opinion in *People v Mauch,* 397
Mich 646, 671–672; 247 NW2d 5 (1976):

"The question whether a defendant's awareness of the maximum
sentence is a factor to be considered in determining whether his plea
is 'understandingly and voluntarily made' within the meaning of the
former rule and minimum constitutional requirements was left unre-
solved by this Court's decision is *People v Ferguson,* 383 Mich 645;
178 NW2d 490 (1970), affirming by an equally divided vote a decision
of the Court of Appeals.[15]

"In many jurisdictions, as in Michigan, the issue is now resolved by
court rule or statute requiring that the judge inform the defendant of
the maximum sentence.[16]

"Courts in other jurisdictions, noting the constitutional roots of the
knowing and understanding standard, have held that awareness of
the maximum sentence is a prerequisite to a valid plea of guilty.[17]
Where the record fails to show that the defendant was aware of the
maximum sentence a hearing on that issue is required.[18]

"A hearing has not been held on the question whether Mauch was
aware of the maximum sentence. Absent a finding following a hearing
that Mauch was unaware of the maximum sentence, there is not a
factual predicate for further consideration whether his plea was
understanding and voluntary."

---

"[15] *People v Ferguson,* 13 Mich App 362; 164 NW2d 547 (1970).

"[16] In some jurisdictions, sentence length is regarded as a 'conse-
quence' of the plea with the result that the judge, on that account is
required to state the maximum sentence. *See, e.g., Ex parte Johnson,*
499 SW2d 180, 181 (Tex Crim App, 1973); *Harper v United States,* 368
F2d 53, 55–56 (CA 10, 1966); Anno, *Court's duty to advise or admonish
accused as to consequences of plea of guilty,* 97 ALR2d 549, 571–574.

"[17] *Wade v Wainwright,* 420 F2d 898 (CA 5, 1969); *United States ex
rel Leeson v Damon,* 496 F2d 718, 721 (CA 2, 1974), *cert den* 419 US
954; 95 S Ct 215; 42 L Ed 2d 172 (1974); *Carter v State,* 291 Ala 83;
277 So2d 896, 898 (1973); *State v Hooper,* 107 Ariz 327; 487 P2d 394
(1971).

"[18] *United States ex rel Hill v United States,* 452 F2d 664 (CA 5,
1971); *Carter v State, supra; State v Hooper, supra; State v Schroeder,*
218 NW2d 591 (Iowa, 1974)."

## II

It appears that there was a relationship between the condition of Beene's probation that was violated, drinking intoxicating beverages, and his history of criminal behavior. It further appears that after he was placed on probation he continued to drink and to commit larcenies and, thus, there is a substantial relationship between the condition of probation that was violated and the revocation of probation and subsequent imposition of a prison sentence.

In *Rial,* the relationship between the condition, "association" with a person having a criminal record, and the asserted violation, revocation, and sentence, appears tenuous.

Rial was convicted of possession of marijuana on evidence that she was in an automobile in which a large quantity of marijuana was found and her acknowledgment that she was culpable. The automobile was driven by a young man. He too was convicted.

The principal charge of probation violation—the other asserted violations all relate to this charge—is that Rial was with Dan Pease (not the young man she was with at the time of her arrest on the marijuana charge) when he was arrested on a charge, the nature of which does not appear, and continued to associate with him although her probation officer told her not to see him. It is not claimed that Pease was engaged in criminal activity at the time he was arrested or that Rial violated any law after her conviction of possession of marijuana.

Arguably, Rial's involvement with the law resulted from her association with exceptionable

young men. Nevertheless, absent a showing that
her "association" with a person with a criminal
record had resulted or will result in her becoming
involved in further criminal activity, association
alone does not tend to justify revocation of proba-
tion and imposition of a jail sentence.

When Rial was placed on probation, the judge
told her she must refrain from the use of liquor
and marijuana. There is no evidence that she
violated that condition. He told her she would
have to continue to work at her job. It appears
that she did so and then lost her job at least in
part as a result of her detention for investigation
of probation violation following Pease's arrest. Her
two failures in a six-day period to report to her
probation officer were related to her apparently
well justified fear that he was moving against her
because of events following her detention in con-
nection with Pease's arrest, including an intemper-
ate outburst on her part when she was detained.

In recent years the notion that the probationer's
conditional liberty can be revoked except in ac-
cordance with fair procedures and upon careful
inquiry has undergone considerable modification.[11]
Conditions of probation are increasingly subjected
to judicial review.[12]

---

[11] *See,* Bassett, *Discretionary Power and Procedural Rights in the Granting and Revoking of Probation,* 60 J Criminal L, Criminological and Police Science 479 (1969).

[12] "The point in all of the above is that although the statute authorizes the court to exercise its judgment with a broad discretion as to conditions of probation, the judgment exercised must be a legal judgment, consonant with our constitutional and statutory safe-guards." *People v Becker,* 349 Mich 476, 488; 84 NW2d 833 (1957).

Similarly, *see People v Higgins,* 22 Mich App 479; 177 NW2d 716 (1970); *People v Terminelli,* 68 Mich App 635; 243 NW2d 703 (1976).

*See, also,* Comment, *Judicial Review of Probation Conditions,* 67 Colum L Rev 181 (1967); Imlay and Glasheen, *See What Condition Your Conditions Are In,* 35 Fed Probation 3 (June, 1971); Bassett, *supra,* fn 11; Note, *Limitations Upon Trial Court Discretion in Impos-ing Conditions of Probation,* 8 Ga L Rev 466 (1974); Comment,

Few probationers will appeal a condition of probation on the ground that it is beyond the power of the court to impose.

Most will take their chances, attempt to comply and hope that to the extent they do not the probation officer or the judge will be lenient. The appeal process is far too time consuming to provide a meaningful alternative; a two-year period of probation will generally expire before an appeal is completed. Moreover, while the appellate courts are now more willing to review conditions, success on appeal is far from certain.

It will be a relatively rare case where a person charged with probation violation will not be guilty of at least a technical violation. Advising him of his rights is important. It is more important to encourage the probationer, if indigent, to accept assignment of counsel, and to provide a meaningful hearing[13] at which inquiry can be made whether the condition he is charged with violating was properly imposed and whether the asserted violation justifies revocation and incarceration:

"Given the vague and all-encompassing nature of conditions of probation, it is not difficult for the probation officer to muster a technical violation as needed. Many probationers are in a steady state of probation violation as a result of conditions relating to keeping 'decent hours,' abstaining from alcohol, and various prohibitions relating to sexual activity. These violations usually go unenforced by the probation officer until such time as he is given reason to believe that a new criminal offense has occurred." Czajkoski, *Exposing the Quasi-Judicial Role of the Probation Officer,* 37 Federal Probation 9, 12–13 (Sept, 1973).[14]

---

*Conditions of Probation Imposed on Wisconsin Felons,* 1962 Wis L Rev 672; Best and Birzon, *Conditions of Probation: An Analysis,* 51 Georgetown L J 809, 831 (1963).

[13] *People v Martin,* 61 Mich App 102; 232 NW2d 191 (1975).

[14] The portion of the article quoted above was preceded by the following:

Peggy Rail was emotionally involved with Dan Pease. She was 17 years old when arrested on the marijuana charge and about two months short of her 18th birthday when sentenced to a jail term of one year following revocation of probation, essentially for failing to terminate her relationship with Pease.

There was a thorough exploration of the circumstances following her arrest with Pease. The record does not reflect any tendency on her part to engage in further criminal activity or indeed any other anti-social conduct.[15] Her relationship with Pease was a personal one, and does not appear to

"In the case of so-called technical violations, the judicial role of the probation officer becomes amplified. Technical violations are those which are somehow covered by the conditions of probation but which are not specified in the criminal statutes. Failure to report to the probation officer or failure to avoid undesirable persons might be a type of technical violation. Oftentimes probation officers proceed on the basis of technical violation when new criminal offenses are suspected but cannot be easily proved. Police and prosecutors regularly call upon the probation officer to invoke some technical violation against a probationer who they believe has committed a new crime. It is patently easier to put a defendant behind bars as a result of a probation violation hearing than it is to send him to prison as a result of a full-fledged trial. In consenting to proceed on the basis of a technical violation when the real issue is a new criminal offense, the probation officer is playing a judicial role. In effect, he is deciding that there is sufficient basis to conclude that the defendant is guilty of the new offense and thus deserves to have the technical violation placed against him." Czajkoski, *Exposing the Quasi-Judicial Role of the Probation Officer,* 37 Fed Probation 12 (Sept, 1973).

The American Bar Association Standards Relating to Probation (Approved Draft, 1970) provide:

"5.3 Proceedings following commission of another crime.

"A revocation proceeding based solely upon commission of another crime ordinarily should not be initiated prior to the disposition of that charge. However, upon a showing of probable cause that another crime has been committed by the probationer, the probation court should have discretionary authority to detain the probationer without bail pending a determination of the new criminal charge."

15 *See* MCLA 771.4; MSA 28.1134.

*See, also, People v Acosta,* 65 Mich App 640, 641; 237 NW2d 601 (1975), where the Court declared:

"The notice of probation violation charged defendant with having

have portended a concert of action directed against any third person or to have been of any public concern.

---

been present in an automobile containing a shotgun and ammunition. The basis of the trial court's revocation order, however, was defendant's anti-social conduct. Assuming arguendo that defendant was properly notified of the initial charge, defendant had no notice that he was expected to meet a charge of anti-social behavior. While the trial court's finding may be viewed as a mere characterization of the conduct contained in the charge, we have previously held that a probationer must have notice of the specific violation charged and the revocation hearing is to be restricted thereto. *People v Elbert,* 21 Mich App 677; 176 NW2d 467 (1970); *People v Davenport,* 7 Mich App 613; 152 NW2d 553 (1967)."

Similarly, *see People v Hill,* 69 Mich App 41, 44; 244 NW2d 357 (1976).